THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK CENTRAL RAILROAD COMPANY, Relator, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, SECOND DISTRICT, and CHARLES B. HILL and Others, as Public Service Commissioners of the State of New York, Being Members of Said Commission, Respondents.

Third Department, November 16, 1921.

Carriers — control and regulation — order by Public Service Commission requiring railroad to provide transportation service between Barge canal terminal and shippers located on its lines and on connecting railroads in State — Public Service Commissions Law, § 49, subd. 3, ¶ a, not unconstitutional — order does not violate due process of law clause or deprive relator of property without compensation — interstate commerce — order amounts to regulation of interstate commerce — Public Service Commission precluded by Interstate Commerce Act, as amended by Federal Transportation Act, from making order — power to make order rests exclusively in Interstate Commerce Commission.

The State, in the aid of commerce, established a Barge canal terminal at Erie basin, city of Buffalo, where it constructed docks and slips for loading and unloading boats, and laid railroad tracks of standard gauge through the terminal from the docks to the adjacent tracks of the relator and made

connections between these terminal tracks and the tracks of the relator. The Public Service Commission, after a hearing, issued an order.requiring the relator to provide transportation between said Barge canal terminal and shippers on its railroad in this State and on railroads connecting with its lines, to furnish the necessary rolling stock for all traffic at the terminal, to operate the same by its own motive power and servants and to file tariffs for all service into and out of said terminal and on its connecting lines.

*Held*, that subdivision 3, paragraph a, of section 49 of the Public Service Commissions Law, under which said order was made, is not unconstitutional, for the State had power, under its reserved control over corporations, to enact the statute requiring the relator to assume the burden imposed.

The order is a regulation of the business of the relator and is not an appropriation of its property for the use of the State or another without compensation, since compensation for the services to be rendered is specifically provided for, and furthermore, it does not violate the due process of law clause for it was granted only after a hearing at which the relator appeared.

However, part of the freights which the relator is required to carry over the connection and over the tracks in said Erie basin are interstate commerce, and since the Interstate Commerce Act, as amended by the Federal Transportation Act of 1920 not only gives to the Interstate Commerce Commission the power to establish physical connection between the lines of the rail carrier and the dock, but also to direct the rail carrier and the water carrier singly or jointly " to construct and connect with the lines of the rail carrier a track or tracks to the dock " and to determine and prescribe the terms and conditions on which these tracks shall be operated, the entire subject of such connections is removed from the operation and authority of the State, and is vested exclusively in the Interstate Commerce Commission.   It follows, therefore, that the Public Service Commission was without authority to make the order in question.

While the only shippers named in the order issued by the Public Service Commission are those within the State of New York, this did not limit the use of the terminal to intrastate commerce.

The fact that the State of New York is a sovereign State and owns the canal does not change the conclusion, for no power over the canal itself, or its operation, is assumed in the Interstate Commerce Act, as amended by the Federal Transportation Act; it assumes merely to control the interstate commerce between the canal carrier and the rail carrier.

JOHN M. KELLOGG, P. J., dissents, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 8th day of December, 1920, directed to the Public Service Commission of the State of New York, Second District, and others, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had relative to compelling the relator to

provide transportation service between the Barge canal terminal at Erie Basin, city of Buffalo and shippers located along its tracks in the city of Buffalo and elsewhere in the State of New York, and shippers located at any other point in the State of New York on the tracks of any connecting railroad, with which the relator can interchange traffic, and further compelling the relator to furnish the necessary rolling stock for traffic at said terminal and to operate the same by its own motive power and servants, and further compelling the relator to file tariffs for all service into and out of said terminal and on its connecting lines.

*Locke, Babcock, Spratt & Hollister [Maurice C. Spratt* of counsel], for the relator.

*Charles D. Newton, Attorney-General [Edward G. Griffin, Deputy Attorney-General,* of counsel], for the respondents.

VAN KIRK, J.:

The State of New York constructed, equipped and maintains the Barge canal for the public use. The State is not a common carrier of commerce, intrastate or interstate, but it furnishes the canal and its facilities without charge to common carriers by water. In aid of commerce it has established a Barge canal terminal at Erie Basin, city of Buffalo, where it has constructed docks and slips for loading and unloading boats, and has laid railroad tracks of standard gauge through the terminal from these docks to the adjacent tracks of the New York Central Railroad Company, the relator, and has made the connection between these terminal tracks and the railroad tracks, all at the expense of the State. The State has not furnished motive power, cars or men to move freight between these docks and the railroad line. To render the terminal tracks and the connection available for traffic, such rolling stock and men are necessary. The Superintendent of Public Works of the State made application to the Public Service Commission for an order requiring the relator to furnish these necessities and to operate over this connection and these tracks. After hearings the order which is under review in this proceeding was made, June 24, 1920. An application by the relator for a rehearing was denied in September, 1920.

The order requires the relator to provide transportation service between this Barge canal terminal on the one hand and shippers located along its tracks in the city of Buffalo and shippers located along its tracks at any other point in the State of New York, and shippers located at any other point in the State of New York on the tracks of any other railroad company, with which the relator can interchange traffic, on the other hand.   It provides that the relator shall furnish the necessary rolling stock for all traffic at this terminal and operate the same (including the spotting, placing and removing of cars) by its own motive power and servants; that the relator shall " file tariffs with the Commission for all service into and out of said terminal, and over its connecting lines."

The connection having been made between the terminal tracks and the relator's line, the relator is willing to place cars on and take cars from a proper interchange track, off its own lands, for this terminal, but it refuses to furnish engines and rolling stock and to operate them through the terminal; it refuses to spot cars on the docks and to do switching at the terminal beyond the proposed interchange track.   Thus the issue here is raised.

The relator makes two principal objections:

1.  That the Public Service Commissions Law (§ 49, subd. 3, ¶ a, amd. by Laws of 1917, chap. 805), as amended by chapter 541 of the Laws of 1920,* which took effect May 5, 1920, is unconstitutional and beyond the power of the Legislature to enact; and

2.  That the Federal Transportation Act of 1920 authorizes the Interstate Commerce Commission to make regulations for interchange of traffic between water carriers and rail carriers and excludes the Public Service Commission of the State from power or authority to act in this respect.

The order made by the Public Service Commission is entirely within the provisions of the aforesaid section of the Public Service Commissions Law.

The State Legislature had power, " under its reserved control over corporations," to enact the statute requiring the relator,

---

* Since changed to Public Service Commission Law by Laws of 1921, chap. 134, and amended.— [REP.

its creature, to assume the burden imposed. (Const. N. Y. art. 8, § 1; *Mayor, etc., v. Twenty-third St. R. Co.,* 113 N. Y. 311; *People* v. *Erie R. R. Co.,* 198 id. 369; revd. on ground not material here, 233 U. S. 671; *Erie R. R. Co.* v. *Williams,* Id. 685; *Adirondack Railway* v. *New York State,* 176 id. 335; *St. Louis, Iron Mountain, etc., Railway* v. *Paul,* 173 id. 404; *New York & New England R. R. Co.* v. *Bristol,* 151 id. 556.)

No provision of the State or Federal Constitution is violated by the enactment of the statute or by the order of the Public Service Commission. The service required to be rendered by the relator is a part of transportation which railroads may be required to perform. The order is a regulation of the business of the corporation and is not an appropriation of its property for the use of the State or of another. (*Grand Trunk Railway* v. *Michigan Railroad Commission,* 231 U. S. 457, 468.) For the services rendered the relator is to be compensated. Neither the rolling stock, nor the men furnished, are taken from the possession and control of the relator. The order is made by the Public Service Commission, under the authority of the statute and after a full hearing, of which the relator had notice and at which the relator attended and was heard. The due process of law provision and the just compensation provision of the Constitutions are not violated. (See State Const. art. 1, § 6; U. S. Const. 14th Amendt. § 1; *Louisville, etc., R. R. Co.* v. *Stock Yards Co.,* 212 U. S. 132.)

But we are of opinion that subdivision 13 of section 6 of the Interstate Commerce Act (24 U. S. Stat. at Large, 380), added by the Panama Canal Act (37 U. S. Stat. at Large, 568, § 11), as amended by the Federal Transportation Act of February 28, 1920 (41 U. S. Stat. at Large, 483, § 412), has excluded the State from this field. The provision of the act referred to is as follows:

" When property may be or is transported from point to point in the United States by rail and water through the Panama Canal or otherwise, the transportation being by a common carrier or carriers, and not entirely within the limits of a single State, the Interstate Commerce Commission shall have jurisdiction of such transportation and of the carriers, both by rail and by water, which may or do engage in the same, in the following particulars, in addition to the jurisdiction

given by the Act to regulate commerce, as amended June eighteenth, nineteen hundred and ten:

" (a) To establish physical connection between the lines of the rail carrier and the dock at which interchange of passengers or property is to be made by directing the rail carrier to make suitable connection between its line and a track or tracks which have been constructed from the dock to the limits of the railroad right of way, or by directing either or both the rail and water carrier, individually or in connection with one another, to construct and connect with the lines of the rail carrier a track or tracks to the dock. The Commission shall have full authority to determine and prescribe the terms and conditions upon which these connecting tracks shall be operated, and it may, either in the construction or the operation of such tracks, determine what sum shall be paid to or by either carrier; Provided, That construction required by the Commission under the provisions of this paragraph shall be subject to the same restrictions as to findings of public convenience and necessity and other matters as is construction required under section 1 of this Act.

" (b) To establish through routes and maximum joint rates between and over such rail and water lines, and to determine all the terms and conditions under which such lines shall be operated in the handling of the traffic embraced."

This act of Congress not only gives to the Interstate Commerce Commission power to establish physical connection between the lines of the rail carrier and the dock, but also to direct the rail carrier and the water carrier singly or jointly " to construct and connect with the lines of the rail carrier a track or tracks to the dock; " also full authority to determine and prescribe the terms and conditions upon which these tracks shall be operated and by whom, and what sum shall be paid to or by either carrier; also to fix rates. This act of Congress was intended to and does cover the same field covered by the aforesaid State statute; and under it the question whether the railroad company could be compelled to operate beyond the connection itself, decided in *People ex rel. Erie R. R. Co.* v. *Pub. Serv. Comm.* (176 App. Div. 28; 220 N. Y. 674), cannot fairly arise. The freights the relator is required to carry over this connection and over the tracks in the basin

442 People ex rel. N. Y. C. R. R. Co. *v.* P. S. Comm.

Third Department, November, 1921.                    [Vol. 198

are interstate commerce. (*Louisville, etc., R. R. Co.* v. *Stock Yards Co., supra,* 142, 143.) It is true that the only shippers named in the order are those within the State of New York. By naming these shippers no limitation of the use of the terminal to intrastate commerce was accomplished. (*McFadden* v. *Alabama Great Southern R. Co.,* 241 Fed. Rep. 562.) The relator company will be required to receive freight brought to the terminal by the water carrier, wherever its origin, and it will be required to transport from the shipper to the dock freight wherever its destination; and in general to interchange such traffic as is presented for interchange at the terminal. The record shows that freights upon the canal include shipments from foreign countries, as well as from other States of the Union. "Commerce takes its character as interstate or foreign when it is actually started in the course of transportation to another State or to a foreign country." (*Louisiana Railroad Commission* v. *Texas & Pacific Railway,* 229 U. S. 336.) "A train moving and carrying freight between two points in the same State, but which is hauling freight between points one of which is within and the other without the State, or hauling it through the State between points both without the State, is engaged in interstate commerce and subject to the laws of Congress enacted in regard thereto." (*Northern Pacific Railway* v. *Washington,* 222 U. S. 370, head note.) Congress having exerted its authority to regulate interstate commerce by the direction and control of connections between rail carriers and water carriers, the entire subject of such connections is removed from the operation of the authority of the State, and the power of the State to regulate such connections and the operation of them ceases to exist; when the Federal government has exercised its power, it covers the whole field; and even if, in certain details, the State act differs from the Federal act, such State act is still inoperative. (*Erie R. R. Co.* v. *New York,* 233 U. S. 671; *Southern Railway Co.* v. *Railroad Commission of Indiana,* 236 id. 439, 448; *Chicago, Rock Island, etc., Railway* v. *Hardwick Elevator Co.,* 226 id. 426, 435.) We are unable to find in the statute justification for the claim by the Attorney-General that the provisions of the Federal act in question do not apply to canal traffic or State terminals. The terms of the statute are

in conflict with this view. Nor do we find in the act any proviso or exception covering the subject-matter of this order under review.

Relief cannot be had from this conclusion because of the fact that the State of New York is a sovereign State and owns the canal. No power over the canal itself, or its operation, is assumed in this act of Congress; it assumes to control the interstate commerce between the canal carrier and the rail carrier. The State is not doing the work of a common carrier. The common carriers operating upon the canal are those persons and corporations, owning boats or leasing them, who are engaged in carrying freights thereon, and the required connection and railroad facilities are for the use and benefit of such common carriers. There can be no conflict between the Federal government and a State in the regulation of interstate commerce, the absolute control of which commerce is given by the United States Constitution (Art. 1, § 8, subd. 3) to the Federal government. There would be a curious conflict should it be held that one common carrier (the railroad) was under the control of Congress in this respect and a connecting carrier (the State) was not.

We conclude that the proceeding should have been taken before the Interstate Commerce Commission, and that the Public Service Commission had no authority to act. In view of this conclusion it is not necessary to discuss other questions raised.

The order of the Public Service Commission should be vacated and the proceedings dismissed, with costs.

COCHRANE, H. T. KELLOGG and KILEY, JJ., concur; JOHN M. KELLOGG, P. J., dissents with opinion.

JOHN M. KELLOGG, P. J. (dissenting):

The Barge canal and its terminals, including free docks, free storage, free use of mechanical appliances for loading and unloading, and warehouses, are great public works for the benefit of all the people. These activities are governmental functions, exercised by the State solely for the public welfare. The State has made a great public highway, which can be used free for transportation purposes, and while the State does

not own the boats for carrying merchandise, it controls and manages the canal and the terminals in the public interest. The object of the terminal is to allow persons using the canal to make proper connection with the railroads or boats for the further transportation of their cargoes, or to receive from the boats, or cars, property to be transported over the canals. The State maintains railroad tracks upon the terminal property, which are connected physically with the relator's tracks, and the important question here is the power of the Public Service Commission to compel the relator, a State corporation, to operate its engines and cars for delivering and receiving freight arriving at. or near the terminal and to spot cars thereon. Many canal boats are tramps, running wild, not upon regular schedule or routes. It is, therefore, necessary, in the interest of the State, as the owner and operator of the highway, to see that the railroad performs its duty with reference to cargoes shipped to or from the terminal. The State statutes are ample to authorize the Public Service Commission to require the service.

It is urged that the Federal Transportation Act of February 28, 1920, excludes the State from determining how its terminals 'shall be operated. That statute, in general terms, gives the Interstate Commerce Commission power to require certain connections, which it is claimed may cover this case, and to fix the rate for service. The power given. to the Commission to regulate is not itself a regulation. Congress has power to regulate interstate commerce, but the power to regulate is unimportant unless Congress or the Interstate Commerce Commission, in a proper case, exercises the power. The State has general power to regulate commerce within the State, but when Congress has made certain regulations with reference to interstate commerce, the State cannot make any inconsistent regulations with reference thereto. It is not claimed that the Interstate Commerce Commission has exercised the power given, or that it has regulated service to and from this terminal. No regulation by the Interstate Commerce Commission is pointed out which conflicts with the regulation now under review. In the most favorable view to the appellant, the Interstate Commerce Commission may have power to make regulations as to this terminal, but the

answer is that it has never made any, and, therefore, the subject is open to the Public Service Commission.

In *N. Y. C. R. R. Co.* v. *Winfield* (244 U. S. 147) it was held that the Federal Employers' Liability Act completely occupied the field as to when and how the employer is liable to its employees for accidents in interstate commerce, and that the State Workmen's Compensation Law had no application. The State may act in these matters, in the absence of Federal regulation, and if Federal action has been taken, the State may act in matters not covered by Federal enactments. (*Missouri Pacific Ry.* v. *Larabee Mills*, 211 U. S. 612, 624; *Atlantic Coast Line* v. *Georgia*, 234 id. 280, 292–294; *Missouri, Kansas & Texas Ry. Co.* v. *Harris*, Id. 412, 417.)

When the Interstate Commerce Commission makes regulations interfering with the regulations of the State as to its terminals, so far as corporations created by the State are concerned, it will then be a proper question to determine how far such regulations may be valid, but in my judgment that question has not yet arisen.

The determination under review may be satisfied by construing it as relating to intrastate commerce only. All reasonable intendments are in favor of the law, and in order to defeat it we cannot assume that the Public Service Commission attempted to regulate interstate commerce, if it had no power so to do. The Public Service Commission may regulate intrastate commerce, and if it has no further power in the premises, the relator may protect itself when the regulation is sought to be used for an improper purpose. I favor affirmance.

Determination of the Public Service Commission vacated and proceeding dismissed, with fifty dollars costs and disbursements.