272 U.S. 457 (1926)
UNITED STATES ET AL.
v.
NEW YORK CENTRAL RAILROAD COMPANY.
No. 284.
Supreme Court of United States.
Argued October 29, 1926.
Decided November 22, 1926.
APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK.
*458 Mr. Blackburn Esterline, Assistant to the Solicitor General, with whom Solicitor General Mitchell was on the brief, for the United States.
Mr. P.J. Farrell for the Interstate Commerce Commission.
Mr. Robert E. Whalen, with whom Mr. Charles C. Paulding was on the brief, for the appellee.
MR. JUSTICE STONE delivered the opinion of the Court.
The State of New York, by its Superintendent of Public Works, in a complaint filed with the Interstate Commerce Commission, sought to compel the New York Central Railroad Company to provide transportation service between the public terminal of the Erie Barge Canal at Buffalo and shippers located along its tracks and along the lines of other railroads with which it can interchange traffic. The service demanded included the furnishing of rolling stock, motive power, and the placing and removal of cars on the tracks within the terminal, incident to moving traffic between the terminal and appellee's lines. The jurisdiction of the commission was invoked under § 6, par. 13, of the Interstate Commerce Act as amended by the Panama Canal Act; August 24, 1912, c. 390, 37 Stat. 568, and §§ 412, 413, Transportation Act; February 28, 1920, c. 91, 41 Stat. 483.[1]
*459 A similar application had been made to the Public Service Commission of New York (Second District). The order of the commission granting this relief was vacated by the state Supreme Court on the ground that the traffic *460 concerned was interstate in character, jurisdiction over which under the statutes already cited was in the Interstate Commerce Commission. People ex rel. New York Central R.R. v. Public Service Commission, 198 App. Div. 436; affirmed without opinion, 232 N.Y. 606.
In the proceedings before the Interstate Commerce Commission, two barge carriers, neither of which had filed rates with it or the Public Service Commission of New York, intervened and were made parties on their petitions setting forth that the interchange of traffic sought to be established by complainant was essential to their business.
After a full hearing the commission granted the relief sought. State of New York v. New York Central R.R., 95 I.C.C. 119. The railroad company then filed a bill in equity in the District Court for northern New York to enjoin the enforcement of the commission's order. The case was heard on the record of the Interstate Commerce Commission proceedings by the District Court, three judges sitting, Urgent Deficiencies Act; October 22, 1913, c. 32, 38 Stat. 220; Lambert Co. v. Balt. & Ohio R.R., 258 U.S. 377; which granted the injunction. 13 Fed. (2d) 200. The case comes here by direct appeal. Urgent Deficiencies Act, supra.
The State of New York built, owns and controls the Erie Barge Canal and terminals, wharves and docks used in connection with it, including the Erie Basin terminal at Buffalo. The canal extends eastwardly from Buffalo by a circuitous route to the Hudson River and has several branches. The State does not own barges or rolling stock; nor does it transport merchandise or operate the canal, but it maintains this waterway with its facilities open to free public use. About 75 per cent. of the traffic passing over it is interstate.
The Erie Basin terminal, having an area of 9.25 acres, is located on the harbor of Buffalo, adjacent to the right-of-way *461 of the railroad company. It includes two concrete piers with equipment for loading and unloading freight, and five thousand feet of railway track, with sidings, switches and storage tracks. There is a physical connection by switching tracks between the terminal and appellee's lines, which was made in 1919 under a contract between the Director General of Railroads and the State of New York. The New York Central's main road between Buffalo and New York City parallels the barge canal and serves important points reached by it or its connections. The effect of appellee's refusal to perform the transportation service ordered by the Commission is to preclude the interchange of traffic between rail carriers and barge canal carriers at Buffalo, and incidentally to avoid the diversion to the canal of a substantial amount of traffic now passing over the lines of the railroad company to and from industries located along its right-of-way.
In granting the injunction, the district court disregarded the intervention of the two canal carriers on the ground that they were not shown to be engaged in interstate commerce. Section 6, par. 13, of the amended Interstate Commerce Act insofar as it confers authority on the commission to order the operation of the connecting tracks and to determine the sum to be "paid to or by either carrier" was construed to require the presence of two carriers before the commission subject to its jurisdiction. It therefore held that the commission was without jurisdiction to grant the relief sought because there were not two carriers before it, and further, that the complainant, a sovereign State, as owner of the terminal but not a carrier, was beyond its regulatory powers, and presumably could not invoke its jurisdiction.
We lay to one side the question whether the intervenors within the meaning of these Acts are carriers of property which "may be or is transported from point to point in *462 the United States . . . not entirely within the limits of a single State." Nor need we consider to what extent, if at all, the State of New York in the event of its failure to maintain its tracks or facilities is beyond the regulatory or coercive power of the commission as asserted below. Cf. Georgia v. Chattanooga, 264 U.S. 472; Bank of United States v. Planters' Bank, 9 Wheat. 904, 907.
The jurisdiction of the commission in this case was properly invoked. A state, when its interests are concerned, as well as a private individual, whether carrier or not, may file a complaint with the commission. Interstate Commerce Act, § 13, as amended June 18, 1910, c. 309, 36 Stat. 550. Moreover a complaint is not a prerequisite to the exercise of jurisdiction by the commission. It may of its own motion investigate and act upon any matter which may be the subject of complaint (with exceptions not now relevant), § 13, par. 2, Interstate Commerce Act, as amended; Panama Canal Act, supra, at p. 568. Hence the only question that need be considered here is the power of the commission, assuming there was but one carrier before it, to issue the order now attacked.
The Panama Canal Act is by its terms supplemental to the Act to Regulate Commerce, and its obvious purpose was to extend to rail carriers connecting with water carriers in interstate commerce the requirements of § 1, par. 9 of the earlier acts, c. 3591, 34 Stat. 585, 586; c. 309, 36 Stat. 547, for furnishing switching and car service to lateral branch railroads and private sidetracks. By § 6, par. 13, so far as pertinent to the present inquiry, the commission is given authority to establish physical connection between the lines of the rail carrier and the dock of the water carrier, and to determine and prescribe the terms and conditions upon which the connecting tracks should be operated. It "may either in the construction or the operation of such tracks determine what sums shall be paid to or by either carrier."
*463 We may assume, without deciding, that the commission may not determine the amount to be paid to or by either carrier concerned without having both before it. But the commission is not required by the terms of the statute to make such a determination and here it did not do so. A determination with respect to construction costs was not necessary since the physical connection had already been established. There could be no need for directing a contribution of operating expenses since the rail carrier was ordered to furnish the entire car service. It was free to establish such rates as it deemed reasonable, subject to review by the commission if necessary. The only parties concerned in the order actually made were those before the commission: appellee, which was required to furnish the service, and the State of New York, whose terminal facilities were thus to be used. To have required the presence of one or more canal carriers before the commission for the purpose of making this order would have been an idle ceremony. The construction of the Act contended for is unwarranted by its language and incompatible with its purpose to create an administrative body with authority to facilitate the interchange of interstate traffic between rail and water carriers by a less formal procedure than prevails in courts of law. We conclude that the commission had authority to make the order and that its findings were supported by the evidence.
We have fully considered other objections to the order but only one is of sufficient moment to require mention. It is argued that the jurisdiction conferred by § 6, par. 13, is limited to interstate transportation while the order directs transportation of both interstate and intrastate traffic. By the terms of this section, the commission is given jurisdiction both of the transportation described and of the carriers, rail and water, engaged in such transportation. By definition, transportation includes ". . . all instrumentalities and facilities of shipment or carriage, *464 irrespective of ownership . . . and all services in connection with the receipt, delivery, . . . and transfer in transit, . . . and handling of property transported," § 1, par. 3, Transportation Act, supra, at pp. 474-475.
The commission having jurisdiction over the carriers and the facilities by which the transportation is carried on, the question is narrowed to whether its jurisdiction extends to the entire current of commerce flowing through this terminal although intrastate in part. When we consider the nature and extent of the commingling of interstate and intrastate commerce, and the difficulty of segregating the freight passing through the terminal, we think it clear that Congress in employing such broad language as "the commission shall have full authority to determine and prescribe the terms and conditions upon which these connecting tracks shall be operated" intended to confer upon the commission power to regulate the entire stream of commerce. Where, as here, interstate and intrastate transactions are interwoven, the regulation of the latter is so incidental to and inseparable from the regulation of the former as properly to be deemed included in the authority over interstate commerce conferred by statute. This was the view of the state court. People ex rel. New York Central R.R. v. Public Service Commission, supra. Cf. State of Colorado v. United States, 271 U.S. 153; Interstate Commerce Commission v. Goodrich Transit Co., 224 U.S. 194; Dayton-Goose Creek Ry. v. United States, 263 U.S. 456, 485; Texas & Pac. Ry. v. Gulf, etc., Ry., 270 U.S. 266. An interpretation of the statute which would in practice require the segregation of all shipments in interstate commerce would make compliance with the commission's orders impossible and defeat the purpose of the Act.
Judgment reversed.
MR. JUSTICE SUTHERLAND took no part in the consideration or decision of this case.
NOTES
[1] "When property may be or is transported from point to point in the United States by rail and water through the Panama Canal or otherwise, the transportation being by a common carrier or carriers, and not entirely within the limits of a single State, the Interstate Commerce Commission shall have jurisdiction of such transportation and of the carriers, both by rail and by water, which may or do engage in the same, in the following particulars, in addition to the jurisdiction given by the Act to regulate commerce, as amended June eighteenth, nineteen hundred and ten:

(a) To establish physical connection between the lines of the rail carrier and the dock at which interchange of passengers or property is to be made by directing the rail carrier to make suitable connection between its line and a track or tracks which have been constructed from the dock to the limits of the railroad right of way, or by directing either or both the rail and water carrier, individually or in connection with one another, to construct and connect with the lines of the rail carrier a track or tracks to the dock. The Commission shall have full authority to determine and prescribe the terms and conditions upon which these connecting tracks shall be operated, and it may, either in the construction or the operation of such tracks, determine what sum shall be paid to or by either carrier: Provided, That construction required by the Commission under the provisions of this paragraph shall be subject to the same restrictions as to findings of public convenience and necessity and other matters as is construction required under section 1 of this Act.
(b) To establish through routes and maximum joint rates between and over such rail and water lines, and to determine all the terms and conditions under which such lines shall be operated in the handling of the traffic embraced.
(c) To establish proportional rates, or maximum, or minimum, or maximum and minimum proportional rates, by rail to and from the ports to which the traffic is brought, or from which it is taken by the water carrier, and to determine to what traffic and in connection with what vessels and upon what terms and conditions such rates shall apply. . . ."
The Panama Canal Act also provides:
"The orders of the Interstate Commerce Commission relating to this section shall only be made upon formal complaint or in proceedings instituted by the Commission of its own motion and after full hearing."