## ISTHMIAN S. S. CO. et al. v. UNITED STATES.

District Court, S. D. New York.
Oct. 8, 1931.

Charles S. Belsterling, of New York City, for petitioner Isthmian Steamship Co.

Ernest E. Baldwin and Luke D. Stapleton, Jr., both of New York City, for petitioner Argonaut Steamship Line, Inc.

Ernest E. Baldwin and Nathan L. Miller, both of New York City, of counsel, for petitioners.

George Z. Medalie, U. S. Atty., of New York City (William E. Collins, Sp. Asst. to

U. S. Atty., Roscoe H. Hupper, and William J. Dean, all of New York City, of counsel), for the United States.

Before AUGUSTUS N. HAND, Circuit Judge, and COXE and PATTERSON, District Judges.

PER CURIAM.

The petitioners are common carriers wholly by water engaged in the operation of various vessels in foreign commerce, and in the intercoastal trade of the United States between Atlantic Coast ports and Pacific Coast ports. They have brought suit to restrain the carrying out of that part of an order of the United States Shipping Board which required them to adjust their rates and charges "so that in future, for or in connection with transportation from Atlantic Coast ports of carload quantity shipments solid delivered to one consignee at one Pacific Coast port, each of said * * * carriers shall exact compensation not higher than ten (10) cents per one hundred (100) pounds below that which it contemporaneously exacts for or in connection with the transportation of similar carload quantity shipments from Atlantic Coast ports split delivered between Pacific Coast ports."

It has been the practice of steamship lines operating in the intercoastal trade between Atlantic and Gulf ports on the one hand and Pacific Coast ports on the other to charge for transportation rates of freight based upon the quantity transported. When the quantity transported is more than a carload minimum, which necessarily varies in tonnage according to the nature of the commodity, the charge is at prevailing carload rates. When it is less than the prescribed carload minimum, the charge is at a rate higher than the carload rate; generally 50 cents per 100 pounds higher. For some time it has been the practice of the petitioners and certain other steamship lines to charge the prevailing carload rates on shipments from the Atlantic Coast which are split delivered between two or more Pacific ports of call, but are loaded at the Atlantic ports in carload lots.

The Associated Jobbers of Los Angeles, upon a sworn complaint filed with the Shipping Board, assailed the practice of charging prevailing carload rates on carload quantities which are delivered in segments between two or more Pacific Coast ports of call, commonly known in the trade as "split delivered carload lots," as being in violation of sections 16 and 18 of the Shipping Act (46 USCA §§ 815, 817). They filed their complaint against the Isthmian Steamship Line and Argonaut Steamship Line and various other water carriers, and prayed for an order requiring these companies to cease and desist from the alleged violation of the Shipping Act, and to put in force such other maximum rates as might be nonpreferential. Certain associations, Chambers of Commerce, and business corporations were allowed by the Board to intervene in this proceeding.

The 1,300 odd pages of testimony taken before the Shipping Board have been carefully examined, and we are entirely satisfied that there was ample evidence justifying its conclusion that a split delivery of cargo lots between Pacific ports of call involved services substantially greater than those rendered where quantities are delivered in carload lots. Not only did this split delivery service admittedly involve more documentation, but it likewise required additional clerical services in checking more lots of cargo, and greater labor in stevedoring. It is no answer to say that more clerks were not added to the staff of the steamship lines because of the documentations and the checking of the split cargo deliveries. Such deliveries consumed a relatively larger amount of labor of the clerks which the carriers employed than the handling of carload lots would have done. In the same way, it is no answer, when additional stevedoring is required, to say that under the contracts which the Isthmian Steamship Company and Argonaut Line, Inc., had with their stevedores the latter were paid by the ton, and that the carrier therefore obtained each service at the same cost. It is quite evident if the stevedores charged the same amount per ton for the two services, though the real expense of discharging for split deliveries was much greater than that of unloading carload lots, that they were making the carload lots bear the additional cost involved in the split delivery service. It seems to follow that the cost of these quite different services was, as a matter of convenience, averaged at a fixed rate per ton, but that under such a contract the carriers were paying more for the stevedoring of carload lots in proportion to the services rendered than they were for the stevedoring of split deliveries. It is obvious that if the Isthmian Steamship Company and Argonaut Steamship Line, Inc., had not carried split delivered carload lots they could have secured from their stevedores a lower contract rate per ton for cargo handled. The fact that this additional charge

necessarily entered into the freight rates for carload deliveries shows that they were relatively too high.

The petitioners' stevedoring contracts show no separate rate for handling less than carload shipments, yet they charge fifty cents a hundred pounds more for less than carload shipments than for carload shipments. This shows that in calculating the rate the total stevedore costs are "just averaged straight through," as the witness Cribben testified was the case.

It appears from the evidence before the Shipping Board that an additional charge of 10 cents per 100 pounds was made for segregating a carload shipment at a single Pacific port, and that a similar charge was made for assembling and breaking up a carload lot at Atlantic ports for westerly shipment. The testimony that split deliveries involve services substantially greater than delivery of carload lots, and that an additional charge of 10 cents per 100 pounds is made for services resembling those for split deliveries, was the basis for the order which the Board made.

■ The petitioners first object to the Board's procedure because the complaint filed by the Associated Jobbers of Los Angeles was not made by a person authorized to institute such a proceeding.

Section 23 of the Shipping Act (46 USCA § 822) provides that: "Orders of the board relating to any violation of this Act shall be made only after full hearing, and upon a sworn complaint or in proceedings instituted of its own motion."

Section 22 (46 USCA § 821) provides that: "Any person may file with the board a sworn complaint setting forth any violation of this Act by a common carrier by water * * * and asking reparation for the injury, if any, caused thereby."

"Person" is defined by section 1 of the act as including "corporations, partnerships, and associations, existing under or authorized by the laws of the United States, or any State. * * *" (46 USCA § 801).

The Associated Jobbers of Los Angeles, who filed a complaint with the Shipping Board, is an association composed of persons, firms, and corporations engaged in wholesale trade and manufacture at Los Angeles and contiguous places. Such an organization is of the class "existing under * * * the laws" of a state described in the act. United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975,

27 A. L. R. 762; Brown v. United States, 276 U. S. 134, 48 S. Ct. 288, 72 L. Ed. 500. But, aside from this, under section 23, the Board was empowered to institute a proceeding to abate violations of the Shipping Act "of its own motion." There is no reason for giving the statutory remedy a procedural narrowness that would preclude the Board from utilizing the complaint of a third party, even if in some respects irregular, to correct violations of the act. United States v. New York Central R. Co., 272 U. S. at page 462, 47 S. Ct. 130, 71 L. Ed. 350; Houston, East & West Texas Ry. Co. v. United States, 234 U. S. 342, 34 S. Ct. 833, 58 L. Ed. 1341.

■ The petitioners next object to the complaint by the Associated Jobbers of Los Angeles on the ground that a "person" to be qualified to file a complaint must be one directly affected by the alleged violations of the act. The statute contains no such limitation. Section 22 (46 USCA § 821) provides that "any person may file * * * a sworn complaint setting forth any violation of this Act by a common carrier by water * * * and asking reparation for the injury, if any, caused thereby." While it is evident that in order to obtain "reparation" for injury "a person" must be directly affected by the violation, the words "injury if any" indicate that the remedy does not necessarily include "reparation," but may relate only to the prevention of unfair or discriminatory rates in the interest of the public. As was said in the analogous interstate commerce case of Baer Bros. Mercantile Co. v. Denver & R. G. R. Co., 233 U. S. at page 488, 34 S. Ct. 641, 645, 58 L. Ed. 1055: "The grounds of complaint may be joint or separate, and the very fact that they may sometimes be separate shows that the presence of both is not jurisdictional. * * *" The Supreme Court in that decision likewise said that: "Awarding reparation for the past and fixing rates for the future involve the determination of matters essentially different. One is in its nature private and the other public. One is made by the Commission in its quasi judicial capacity to measure past injuries sustained by a private shipper; the other, in its quasi legislative capacity, to prevent future injury to the public." Section 16 of the Shipping Act (46 USCA § 815) is drawn in the broadest terms and makes it unlawful to "give any undue or unreasonable preference or advantage to any particular person, locality, or description of traffic in any respect whatsoever, or to subject any particular per-

254

son, locality, or description of traffic to any undue or unreasonable prejudice or disadvantage. \* \* \*" See Smith v. Interstate Commerce Comm., 245 U. S. at pages 44, 45, 38 S. Ct. 30, 62 L. Ed. 135; United States v. New York Cent. R. Co., 272 U. S. at page 462, 47 S. Ct. 130, 71 L. Ed. 350. We hold that the complaint was by a "person" authorized to make it under the terms of the statute.

■ A further objection is urged to the various intervening petitions which the Board allowed to be filed in the proceeding by the Associated Jobbers of Los Angeles. It is hard to see how this intervention, if it were deemed erroneous, could affect the validity of the order sought to be enjoined. Not only is intervention expressly sanctioned by rule 2 of the Rules of Practice of the. Board, but the Interstate Commerce Commission has allowed intervention by interested parties in the case of land carriers. Boston & Albany v. Boston. & Lowell Railroad Co., 1 I. C. R. 500, 575, 577. Section 22 of the Shipping Act authorizes the Board to investigate the complaint "in such manner and by such means, and make such order as it deems proper." Certainly one means of investigation, and a useful one, is by entertaining the complaints and hearing the evidence of persons in a situation similar to that of the original complainant. We find no valid objection to allowing intervention.

■ Objection is likewise made that the cease and desist order of the Board was improper because made in a proceeding by "Associated Jobbers and Manufacturers," whereas the complaint filed was by Associated Jobbers of Los Angeles. This happened because in the interval between the filing of the complaint and the making of the order the name of the complainant was changed. It is also objected that the petitioners in this judicial proceeding were not properly brought before the Board upon the complaint of the Associated Jobbers of Los Angeles because they were described in that complaint as Argonaut Steamship Line and Isthmian Steamship Lines, whereas Argonaut Steamship Line has since changed from a partnership to a New York corporation, doing business under the name of Argonaut Steamship Line, Inc., and Isthmian Steamship Lines, which was originally a trade-name for the marine operations of the United States Steel Products Company, has since become the Isthmian Steamship Company, a Delaware corporation. But the Argonaut and Isthmian corporations have answered the complaint of Associated Jobbers of Los Angeles, have called witnesses, and cross-examined those of their opponents. We cannot see that any prejudice arose from the failure to bring them in by supplemental petition and order, and we accordingly hold that this objection, like the one to the name of Associated Jobbers and Manufacturers, is of no merit.

■ The further objection is made that the government cannot prevail in its motion to dismiss the petition because the allegation in the petition must be taken to be admitted by demurrer that there is no evidence that "any particular person, company, locality or description of traffic has been subjected to any undue or unreasonable prejudice or disadvantage" by the Isthmian Steamship Company or Argonaut Steamship Line, Inc. But the allegation is a mere conclusion of the pleader, in view of the fact that the testimony before the Board is referred to in the petition, and is before this court. In this respect, the present record differs from that before the Supreme Court in Chicago Junction Case, 264 U. S. 258, 44 S. Ct. 317, 68 L. Ed. 667, and Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U. S. 88, 33 S. Ct. 185, 57 L. Ed. 431, where the evidence introduced at the hearing was not incorporated in the bill.

■ It is also insisted that the Board refused to find that the rates were unreasonable, as it might have done under section 18 of the Shipping Act (46 USCA § 817) had the facts warranted, and that no statutory authority exists for establishing nonprejudicial and nonpreferential rates. But section 16 (46 USCA § 815) makes it unlawful to "give any undue or unreasonable preference or advantage to any particular person, locality, or description of traffic \* \* \*" and section 22 (46 USCA § 821) empowers the Board to investigate and "make such order as it deems proper." The Interstate Commerce Commission already possessed authority to fix relative rates in order to prevent undue preference and advantage, and the powers given the Shipping Board under sections 16 and 22 are sufficient in terms to justify its order. Houston, East & West Texas Ry. Co. v. United States, 234 U. S. 342, 34 S. Ct. 833, 58 L. Ed. 1341; American Express Co. v. South Dakota ex rel. Caldwell, 244 U. S. 617, 37 S. Ct. 656, 61 L. Ed. 1352.

The Shipping Board has not fixed a maximum rate under section 16. It has left the

steamship lines free to lower the rate on carload deliveries or to raise it on split-deliveries, provided the differential is maintained. We hold that the Board had power under sections 16 and 22 to remedy preferences by requiring adherence to relative rates.

■ The contention that the Board had no competent evidence that split delivery cost the petitioners more than delivery in carload lots is quite unfounded. Even their own witnesses showed that the cost of split delivery was greater. Petitioners principally relied on the fact that they had contracts with stevedores at a fixed price per ton, and ignored the consideration that, while the price for each service was uniform under these contracts, the labor involved in split deliveries was substantially greater than that for cargo lots. In fact, under the arrangement, the carrier was getting a preferential stevedoring rate for split deliveries giving the benefit of it to customers who were interested in those deliveries, and burdening those who took deliveries in carload lots with a higher rate than was necessary or just. The testimony as a whole clearly established that a preferential rate was given for split deliveries. Not only is the weight of all the evidence to the effect that the cost of split deliveries substantially exceeds deliveries in carload lots, but the proof that these very petitioners make an additional charge of 10 cents per 100 pounds for consolidating freight into a carload lot and for split delivering a carload quantity among different consignees at one port is most persuasive evidence that the differential fixed by the Board is fair. In our opinion, there can be no doubt that the administrative action of the Board was within its powers, and is subject to no criticism by this court.

■ The petitioners further contend that there is a defect of parties, because steamship companies carrying freight from Gulf to Pacific ports are not made parties. But their presence is not necessary to make an order against other companies that may violate the statute. Texas & Pacific Railway v. Interstate Commerce Commission, 162 U. S. at page 205, 16 S. Ct. 666, 40 L. Ed. 940.

The petition is dismissed, and the application for injunction is denied. Proposed findings of fact and conclusions of law may be submitted within ten days. They will not be made part of the record, and are suggested only to aid the court in preparing its formal decision.