## CONTINENTAL DEVELOPERS & CONVERSIONS, INC. v DEPARTMENT OF REVENUE, STATE OF FLORIDA

Case No. 84-2572-CA-01-HDH

Twentieth Judicial Circuit, Collier County

February 19, 1986

### APPEARANCES OF COUNSEL

**Steven I. Peretz,** Law Offices of Alan J. Kluger, for plaintiff.

**Jim Smith,** Attorney General, and **Edwin A. Bayo,** Assistant Attorney General, for defendant.

### OPINION OF THE COURT

HUGH D. HAYES, Circuit Judge.

THIS CAUSE came on for the Court's review based upon a Motion for Summary Judgment having been filed by both the Plaintiff and the Defendant pursuant to Rule 1.510, Florida Rules of Civil Procedure. Based upon argument of counsel for each party, as well as a review of the memos of law filed by respective counsel, the Court finds that the

Plaintiff's Motion for Summary Judgment should be granted and concomitantly, the Defendant's Motion for Summary Judgment must be denied. The basis of the Court's opinion follows:

## I. *JOINT STIPULATION OF FACTS*

Initially, it must be pointed out that counsel for the respective parties herein stipulated to a joint statement of the operative facts which were controlling in this case. The stipulation, along with its exhibits is attached to this Order as Appendix I. Parenthetically, the Court should point out that the facts are fairly straightforward regarding the sale and purchase of the vessel "Windsong's Lady"; however, for purposes of this Opinion, the Court should emphasize that Paragraph Seven (7), relating to the Vessel's seaworthiness, was quite important.

## II. *REVIEW AND ANALYSIS OF DEFENDANT'S POSITION*

The Department of Revenue essentially argues that the Plaintiff's vessel was stored and used in the State of Florida and, more specifically, because repairs were made under the authority and direction of the Plaintiff at one of Plaintiff's residences located in Naples, Florida, that the "use tax" provision of Chapter 212 of the Florida Statutes was triggered. The relevant portions of F. S. 212 being argued by Defendant are delineated as follows:

SALES, STORAGE, USE TAX—It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state an item or article of tangible personal property as defined herein and who leases or rents such property within the state.

(1) For the exercise of such privilege, a tax is levied on each taxable transaction or incident, which tax is due and payable as follows:

(b) At the rate of 5 percent of the cost of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state.

Likewise, the Florida legislature has defined the terms "storage" and "use" in F. S. 212.02(7) and (8), which provide:

(7) "Storage" means and includes any keeping or retention in this state of tangible personal property for use or consumption in this

**9**

state or for any purpose other than sale at retail in the regular course of business.

(8) "Use" means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, or interest therein, except that it does not include the sale at retail of that property in the regular course of business.

Thus, unless the Plaintiff falls into one of the exemptions of statute or case law, the Defendant argues that pursuant to F. S. 212.21(2) it is the legislative intent of this state to tax each and every sale, admission, use, storage, consumption or rental levied as set forth in the statute.

Even though neither the research of the Defendant nor that of the Plaintiff produced any cases that fit squarely within the facts of the case before the Court today, the Defendant does cite two Florida cases and one Arkansas case which provide support to its line of argument.

In *Klosters Rederi A/S, d/b/a Norwegian Caribbean Lines v. The State of Florida, Department of Revenue*, 348 So.2d 656 (Fla. 3d DCA 1977), the Defendant argues that the breadth of the term "use" was demonstrated to include ship's supplies which were delivered to the ship's port facility for use during the course of cruises conducted outside of the state and in foreign commerce.

The Plaintiff in *Klosters* argued that since these supplies were not used primarily within the state, they should not be taxed. However, the Third District Court of Appeal, per Judge Hendry, correctly pointed out that the particular items taxed were characterized as "expendable", and included such items as toilet paper, kleenex, laundry bags and party supplies. The only real significance of the opinion seems to be that because the items were immediately expendable and theoretically as well as realistically could be used or expended by the passengers when they first came on board ship and yet had not cast off or left the docks, that they were not exempt.

The breadth and expanse of this case really does not appear to be clearly applicable to the current fact situation before the Court today because the stipulated set of facts clearly demonstrates that all immediately expendable items in this case, including supplies, parts and labor, were properly paid for by the Plaintiff including the applicable sales tax.

Likewise, the case of *State Department of Revenue v. Anderson*, 403 So.2d 397 (Fla. 1981), is distinguishable because that case dealt with the failure of a boat purchaser in a sale/leaseback transaction to properly file for the sales tax exemption available to one who basically

10

would qualify as a "dealer". There is no purchase for resale in the stipulation of facts before the Court today. Ironically, the Defendant's reliance upon the exemption provision of F. S. 212.05(2) seems to be misplaced because it appears to relate to the sales tax exemption provided by F. S. 212.05(1)(a) and not to a use tax imposed under F. S. 212.05(1)(b). Specifically, the F. S. 212.05(1)(a)(2) exemption demonstrates that the sales tax paragraph does not apply to the sale of a boat by or through a registered dealer to a purchaser who removes the boat from the state within ten (10) days. Since the Plaintiff's vessel in the present case was acquired outside the territorial waters of Florida, the sales tax provision and its exemptions are not applicable.

Lastly, the Defendant argues in support of its position the case of *Skelton v. Federal Express Corporation*, 531 S.W. 2d 941 (Ark. 1976). Unfortunately, this case is just as supportive of the Plaintiff's position as that of the Defendant.

In *Skelton*, the Arkansas Supreme Court was forced to use a very strict and literal interpretation of its statute, which is very similar to that used by the State of Florida, in order to find that a "use" and "storage" had occurred within that state.

Basically, the facts demonstrated that Federal Express Corporation was an interstate air-carrier of small packages and freight, with its principal place of business in Tennessee. Federal Express would purchase aircraft and transport them in interstate commerce to Arkansas, where each aircraft received necessary and substantial modifications to its body and structure before it could be used in the interstate air-carrier operations of Federal Express. The aircraft, while in Arkansas, received extensive modifications, and as each aircraft was completed, it was delivered to the principal place of business of Federal Express in Tennessee. The production time required for these modifications was approximately fifty (50) days for each aircraft.

The Arkansas Supreme Court determined that in order for the aircraft to be subject to the state's use or storage tax, said aircraft must have been purchased for use or storage in the state and to have finally come to rest within the State of Arkansas. In finding that the Arkansas statute was applicable, the Supreme Court relied upon several significant factors which will be listed forthwith. Firstly, the aircraft were retained in the state for approximately fifty (50) days, and their subsequent use was not solely outside the state of Arkansas, since Federal Express made deliveries and maintained a freight stop in Arkansas. Secondly, the use tax application was upheld upon these aircraft because of their use and/or storage prior to becoming instru-

**11**

mentalities of interstate commerce and it was determined that there was a taxable moment or break in the continuity of the transaction when the aircraft had reached the end of its interstate transportation and had not yet begun to be consumed in the interstate operation of Federal Express. At that moment, the tax on the storage and use, exemplified by retention and exercise of the right of ownership, was effective.

In the case before this Court today, we find some distinguishable characteristics in that the Stipulation of Facts reflect that there was no pattern of an ongoing business transaction in Florida for modification of any number of the Plaintiff's boats, and particularly, as will be explained in further cases to be discussed, the Plaintiff's vessel in the case at bar was involved in a casual stop in Florida for emergency repairs that immediately reflected upon its seaworthiness and safety. The modifications and repairs made in Naples, were to save the property from the dangers of the journey. In the *Skelton* case the Arkansas Supreme Court properly determined that there were numerous and controlling cases standing for the proposition that there was no taxable event if there was an interruption in interstate shipment when the interruption was strictly to facilitate interstate shipment or to save the property from the dangers of its journey. Interestingly, even though the Arkansas Supreme Court found that this exception did not apply to the case before that Court, it does clearly appear to apply to the fact circumstances before this Court.

Likewise, even though the *Skelton* case has been cited by the Defendant in support of its argument, the analysis of facts by the Arkansas Supreme Court would more strongly support the argument of the Plaintiff herein. An additional example of this can be found on page 11 of the opinion where the Arkansas Supreme Court cites to a Supreme Court of Texas case: *Calvert v. Zanes-Ewalt Warehouse, Inc.*, 502 So.2d 689 (Texas 1973), where the Court said:

"Any interruption of the movement of commodities at an intermediate point between origin and final destination, which is not incidental to the transportation or the use of the means of transportation (or being so incidental, is used or extended for the purposes of the owner not incidental to the transportation or the means used therefor) breaks the continuity in transit and subjects the shipment to local taxation at the point of interruption.

Even though the Arkansas Supreme Court determined that the aircraft in that case had left the stream of commerce and had finally come to rest in Arkansas and consequently were subject to taxation at

12

that point, there is no real indicia of facts or evidence in the case before this Court to reflect that the stopping of the "Windsong's Lady" in Naples was anything but incidental to and as part of the continuing journey of the vessel's trip. Thus, the "Windsong's Lady" did not for taxation purposes "come to rest" in Naples, Florida, within the meaning of the *Calvert* case or within the meaning of additional case law and authorities which are going to be cited forthwith.

## III. *REVIEW AND ANALYSIS OF PLAINTIFF'S POSITION*

The Plaintiff, Continental Developers and Conversions, Inc., essentially argues that the stipulation of facts clearly · demonstrate three essential points:

(1) The Plaintiff purchased the vessel solely for use in Texas;

(2) The contact with Florida was solely for the purpose of performing those limited repairs necessary to continue the voyage, and

(3) During the repair period the vessel was not operated by the Plaintiff, its officers, or anyone else.

Based upon these criteria, the Plaintiff urges the Court to find that the case law clearly and unequivocally reflects that the Defendant's assessment of a use tax violates the Commerce Clause of the United States Constitution because the vessel was clearly in interstate commerce and that the Defendant's position is in violent opposition to the "come to rest doctrine" which is the well settled and well founded case law applicable to the fact circumstances before this Court.

It is well settled Federal and Florida law that the Commerce Clause of the United States Constitution prohibits the imposition of state and local taxes upon personal property moving in the stream of interstate commerce. United States Constitution, Article I, Section 8, Clause 3; *Minnesota v. Blasius*, 290 U.S. 1 (1933); *Hughes Brothers Timber Company v. Minnesota*, 272 U.S. 462 (1926); and *State v. Coleman*, 166 So. 226 (Fla. 1936).

Whether a particular transit of property qualifies as interstate commerce in nature depends upon the essential character of the commerce and this is to be determined by the fixed and persistent transportation intent of the shipper at the time of the shipment. *U.S. v. L. L. Majure*, 162 F. Supp. 594 (S.D. Miss. 1957).

A short analysis of the facts and legal propositions of these leading U. S. cases follows:

In *Hughes Brothers Timber Company v. Minnesota*, 272 U.S. 462 (1926), the Petitioner Hughes, was a business concern located in

13

Minnesota and contracted with a paper company in Michigan to deliver cords of pulpwood to the timber company at its rail head, which was located at the mouth of the Pigen River, and constitutes the boundary between Minnesota and the Province of Ontario, Canada. Basically, the hauling and placing of the logs on the ice of the riverbanks of the river would be accomplished and, when the ice broke, the drive of the logs would begin. Those logs on the ice moved of themselves, and those on the banks were pushed in. The issue facing the Court was whether, under the circumstances, the transportation in interstate commerce began at the beginning of the drive in Minnesota, when the ice broke up, or at the point of loading on the lake, which would have been in Michigan. Essentially, the position of Hughes was that the logs were articles of interstate commerce and were, therefore, not taxable by the State of Minnesota. On the contrary, the position of the State of Minnesota was that this was personal property taxable within that state, even though intended for export.

Justice Taft, delivering the opinion for the Court, fund that the parties intended interstate shipment and had bound themselves to it, the logs were segregated and were moving in the contemplated journey, which neither could prevent if they carried out their agreement. Likewise, the delays in the continuity of movement were only incidental to the journey and the necessary change in the mode of transportation by which the logs were carried from a place in one state to a place agreed upon in another were inconsequential. The Court concluded that in these types of cases, the conclusion must be determined from the various circumstances. It is much more difficult to determine the type of commerce involved when the owner retains complete control of the transportation and can change his mind and divert the delivery from the intended interstate destination. The Court on page 476 of its opinion stated:

> The mere power of the owner to divert the shipment already started does not take it out of interstate commerce if the other facts show that the journey has already begun in good faith and temporary interruption of the passage is reasonable and in furtherance of the intended transportation.

Likewise, in the case of *State of Minnesota v. Blasius*, 290 U.S. 1 (1933), the United States Supreme Court was faced with a factual situation in which thousands of head of livestock arrived daily by railroad and truck at the stockyards in Minnesota and were there shipped on to other destinations throughout the United States. In this particular case, however, Blasius purchased cattle which the evidence reflected were not intended to be transported to any other place than

14

Minnesota, nor did they have any intent that the cattle be transportated to any particular place after their sale. When these cattle were bought by Blasius, the State determined that they were owned by him, had not been entered into any carrier for shipment to any point, but had essentially come to rest in the yards at St. Paul, Minnesota.

Mr. Chief Justice Hughes, in delivering the opinion for the Court, determined that a state could maintain a non-discriminatory tax upon property which, although connected with the flow as a general course of business in interstate commerce, had come to rest and had acquired a situs within that particular state. Obviously, the crucial question in determining whether the state's taxing power could be thus exerted, is based upon a "continuity of transit". On pages 9 and 10 of the opinion, the Court stated:

> If the interstate movement has begun, it may be regarded as continuing, so as to maintain the immunity of the property from state taxation, despite temporary interruptions due to the necessities of the journey or for the purpose of safety and convenience in the course of the movement.

In the case of *U. S. v. L. L. Majure*, the Court was faced with the question of whether a particular commerce was interstate or intrastate in nature. This case involved a factual situation whereby the United States, during periods of World War II, was transporting petroleum products from the State of Texas to the aviation fields in the State of Alabama. The proposition of law that was determinative in this particular case was to the effect that in order to determine whether commerce was interstate or intrastate, the Court was required to look to the essential character of the commerce and in determining its "essential character", the most important factor to be considered is the fixed and persisting transportation intent of the shipper at the time of the shipment. On page 598 of the opinion, the Court determined that the intent of the shipper was to be ascertained from the "bundle of circumstances" that surrounds the particular movement.

One of the leading cases in Florida, where the "come to rest doctrine" has been applied is the case of *Whitehead & Kales Company v. Green*, 113 So.2d 732 (Fla. 1st DCA 1959). This case is important for two distinct purposes, one of which is that it deals with the "come to rest doctrine" as well as differentiating between a use tax and a sales tax.

In this particular case, Whitehead maintained a structural steel plant in Michigan where it manufactured and prefabricated steel to be used in the performance of a contract to be performed in Florida.

**15**

The Court emphasized on page 734 of the Opinion:

> . . . we are dealing with a use tax as distinguished from a sales tax. The theory supporting the use tax is that it is an impost on the privilege of using personal property which has been shipped into the state and come to rest in the taxing forum and has become a part of the property within the taxing situs. The levy is actually imposed upon and collected from the ultimate consumer, who as a Florida resident, enjoys the use of the property after it has come to rest.

In following this line of argument, the First District Court of Appeal in the case of *Wanda Marine Corporation v. State of Florida, Department of Revenue*, 305 So.2d 65 (Fla. 1st DCA 1975), was faced with the factual situation in which a yacht, which was the only asset owned by the Wanda Marine Corporation, was purchased in Amsterdam, The Netherlands, as an investment for potential capital gains. The evidence reflected that the corporation was completely owned and controlled by one individual, a Florida resident, and that the boat was used for the owner's pleasure and satisfaction. The boat remained in the State of Florida for an extended period of time and was used for both business and pleasure by the owner of the corporation as well as at certain other times the friends of the owner without the payment of any fees.

In dealing with the question of whether or not the boat was stored or used within the state under such conditions as to make it subject to the use tax imposed by Florida Statute 212.05, the Court reviewed the statutory definitions contained in Florida Statute 212 as well as the review of the *Whitehead* case and determined that the boat in question, although mobile, came to rest in Florida when it was docked for a period of time at the dock of the president of the corporation, that it was used by the corporation for business and pleasure purposes in Florida waters, and that it thereby became a part of the mass property of this State within the intent of the express provision of Florida Statute 212 and was, therefore, subject to the use tax imposed by the Statute.

In contrast to the facts in the *Wanda* case, the joint stipulation of facts in the case before this Court establishes that the "Windsong's Lady" never came to rest in Florida. Instead, it came to rest in the State of Texas. The affidavits established clearly and unequivocally that no one used the vessel "for business and pleasure purposes in Florida waters" or operated the vessel from a dock as its "situs in Florida" as was found in the case of *Wanda*. Rather, the "Windsong's Lady" sole contact with Florida was necessitated by the need to repair the vessel for its journey to Texas. Thus, the Plaintiff's claim is well-founded that

16

the vessel did not "come to rest" in Florida within the contemplation of the Florida use tax and that, therefore, the tax is wholly inapplicable in this case. The facts before this Court, based upon the stipulated set of circumstances, does clearly reflect that the vessel put into Naples for the purpose of undergoing marine repairs necessary to correct its unseaworthy condition. Such a temporary interruption in the interstate voyage was for the "purposes of safety" and "in furtherance of the intended transportation", and thus, the interstate character of the voyage was clearly preserved. The stop in Naples was in direct furtherance of the interstate voyage undertaken by the vessel.

The Court does adopt the argument set forth by the Plaintiff herein, and thus, does accept the Plaintiff's argument that the imposition of the use tax on the vessel, "Windsong's Lady", is null and void because:

"1. The assessment of a use tax against the Plaintiff's vessel violates the Florida use tax statute in that the vessel "Windsong's Lady" was not used by the Plaintiff for any business or pleasure purposes within the State of Florida and, in fact, came to rest in the State of Texas.

2. The Defendant's assessment of a use tax against the Plaintiff's vessel violates the Commerce Clause of the U. S. Constitution in that the vessel "Windsong's Lady" remained within the flow of interstate commerce during its subject contact with the State of Florida."