STATE OF NEBRASKA, EX REL. CHESTER NORTON, V. CHARLES VAN CAMP, COUNTY CLERK, AND JAMES G. KRUSE, INTERVENOR.

FILED JANUARY 3, 1893.    No. 5880.

ORIGINAL application for *mandamus* to compel the respondent, Charles Van Camp, county clerk of Knox county, to call to his assistance two disinterested electors of the twentieth representative district, and with them compare the abstracts of votes cast at the election held November 8, 1892, made by the canvassing boards of the counties of Knox and Boyd for representative, and returned to said county clerk of Knox county by the county clerks of said counties, and issue to the person appearing from said abstracts to have the highest number of votes a certificate of election as representative from said twentieth district in the legislature of Nebraska to convene January 3, 1893.    Finding and judgment for relator.    *Writ allowed.*

*A. W. Agee,* for relator.

*A. J. Sawyer* and *Thomas H. Matters, contra.*

MAXWELL, CH. J., dissenting.

I am unable to assent to the judgment of the majority of the court and I will as briefly as possible state the reasons for failing to do so.

The proof shows beyond question that Boyd county has in fact been attached to Holt county from 1883 to 1890; that two years ago one of the representatives from the district comprising what is now Holt and Boyd counties was a resident of Turtle Creek precinct, in what is now Boyd county; that a supervisor from that precinct sat with the board of supervisors of Holt county and the latter county levied taxes in that county which were collected and paid. These things were a matter of record, which seem to have been kept in Holt county. This state of affairs continued until Boyd county was organized two years ago. There is no proof to the contrary on this point, so that it is established beyond a doubt. But it is claimed that this territory was not lawfully attached to Holt and .therefore the proceedings in that regard are void. The testimony shows that in 1883 an election was held in Holt county to attach this territory to Holt; that at the election a majority of the votes cast upon that proposition was in favor of attaching the territory named to Holt, but that a majority of all the votes cast at that election was not in favor of the proposition. The county board, however, declared the proposition carried and thereafter exercised jurisdiction over that territory. It thus was, in fact, attached to Holt county and became to that extent organized territory, and was not within the provision of the statute as to unorganized territory. As a matter of fact the territory of what is now Boyd county has been attached to Holt for election purposes and not to Knox, from 1883 to the present time. It is true there is some proof tending to show that in 1890 some fifty or sixty persons came from what is now Boyd county into Knox county and voted. Some or all of these were challenged, and swore in their votes. The proof also tends to show that there was an exciting county division election which involved at least one county seat, and presumably that the votes were received by the judges and clerks on that account. These voters are shown to have

come from a portion of the territory between the Missouri and the Niobrara rivers, near to the town of Niobrara. So far as appears these votes were illegally cast, and instead of being an argument in favor of the relator are against him, because if the territory in question had in fact been attached to Knox, the electors thereof no doubt would have applied to the county board of Knox county to create one or more precincts in such territory and appoint election boards. This was done by Holt county, and the proof shows was not done by Knox county. To illustrate, in the early history of this state Lancaster county was attached to Cass county for election, judicial, and revenue purposes, but the people of Lancaster county did not go into Cass county to vote, but election precincts were organized in Lancaster county, where the electors voted and elected their own precinct officers. The votes when cast were returned to Plattsmouth and canvassed there and the records were kept there, and taxes levied by the authorities of that county. In 1862 a member of the legislature in Lancaster county, with three in Cass, was nominated by the electors of Cass and Lancaster counties and elected. Later, Saunders county was attached to Cass county for like purposes. Precincts were created in Saunders county by the proper county authorities of Cass county and the electors of Saunders county voted in their own county and elected their own precinct officers. In 1865 the electors of Cass and Saunders counties elected a member of the legislature from Saunders county, and three from Cass. Taxes were levied and collected by the proper authorities of Cass county and the records were kept at Plattsmouth. Now this is just what was done by Holt county. Will any one contend that the mere voting of fifty or sixty persons, who are claimed to be residents of Boyd county in an exciting county division and county seat election, establishes the right to count the votes of Boyd county for the relator in this case? The truth is, it is apparent, that the casting

of these votes was a fraud upon those voters of Knox county, who were opposed to a division of the county, as the testimony shows that all but thirty-five votes were in favor of such division. There is danger of committing a like wrong upon all the electors of Knox county by counting the votes of Boyd county in this case. As a matter of fact, therefore, Knox county never has exercised, or attempted to exercise, jurisdiction over the territory comprising Boyd county. If it is said the law applies to all unorganized territory, the answer is, this was not unorganized territory, because it was attached to Holt county for election, judicial, and revenue purposes, and the law applies only to territory not otherwise assigned, so that all may be protected and represented. The language of the statute is:

"All counties which have not been organized in the manner provided by law, or any unorganized territory in the state, shall be attached to the nearest organized county *directly east*, for election, judicial, and revenue purposes; *Provided*, That Sioux county shall be attached to Cheyenne county for all the purposes provided for in this section; *Provided further*, That if no county lies *directly* east of any such unorganized territory or county, then such unorganized territory or county shall be attached to the county *directly south*, or if there be no such county, then to the county directly north, and if there be no county directly north, then to the county directly west of such unorganized territory or county.

"Sec. 147. The county authorities to which any unorganized county or territory is attached shall exercise control over, and their jurisdiction shall extend to, such unorganized county or territory the same as if it were a part of their own county.

"Sec. 148. If two or more organized counties, or portions thereof, lie directly east of any unorganized county, then the portions of territory of such unorganized county which lie either north or south of a line running directly

west and in continuation of the boundary line between such organized counties shall be attached to the organized county directly east of such territory, for all purposes of this subdivision." (Secs. 146, 147, and 148, ch. 18, Comp. Stats.)

Suppose, therefore, that the territory in question was unorganized, it is to be attached to the nearest organized county *directly east*. If there is no organized county directly east, then it is to be attached to the nearest organized county *directly south*. Webster defines the word "directly," "In a direct manner; in a straight line or course; without curving, swerving, or deviation." Directly east, therefore, means in a direct line on the same parallel east of Boyd county. An examination of a good map will show that Boyd county is northwest of Knox county; that the northwest corner of Knox county joins the southeast corner of Boyd county—the points of contact extending about seven miles, and that only a triangular point of Boyd county extends as far south as Knox; that Boyd county extends north to the 43d parallel, while Knox county at no point reaches within ten miles of that degree of latitude; that nearly all of Boyd county is north of the degree of latitude that passes along the north line of Knox county.

It is very evident, therefore, that Knox county is not directly east of Boyd county, but is southeast, while Holt county is directly south of Boyd county, and the latter county is and was properly attached to that county for election purposes. It is very clear to my mind that the authorities of Knox never had any right to interfere in the affairs of Boyd county, and they seem to have recognized this fact by not doing so.

But suppose that Knox county had jurisdiction over the territory in question, still the relator is not entitled to the writ. The certificate of nomination shows that the convention was held at Creighton; that a resident of

Knox county was elected president of the convention, and another resident of that county secretary. There is no proof that a call for a convention of this kind was made by any one; or that the republicans of Boyd county were invited, or even notified to attend. A convention to be lawful must represent the whole district, otherwise it would be possible to pack a convention in the interest of particular individuals. No doubt the convention in this case was a fair convention of Knox county, but it should appear from the proof that Boyd county was invited to participate therein, otherwise it cannot be called a *district* convention. This is particularly true under the Australian ballot law of this state. It is conceded that no votes were ever before cast in that district as a *district for representative.* How, then, could it be said that the republican party of the *district* had at the preceding election cast one per cent of the votes? The statement is a mistake, and the only way a person could be nominated in the district, even if one existed, was by petition. In addition to this, the sample ballots do not contain the name of the relator. It is true the name of the relator is written in both the sample and official ballots, but this does not comply with the law. That requires the name to be *printed* in both. The proof also shows that certain friends of the defendant, after the *mandamus* proceedings, circulated a petition, as he claims, without his knowledge, to nominate him in Boyd county for the office in question; that the petition was signed by fifty-three names, but the clerk of Boyd county did not insert the defendant's name in either the sample or official ballots. Whether this was done with or without his knowledge does not in any manner affect this case, as if there was no legal district the casting of votes could not make it legal.

It also appears that the clerk had previously refused to insert the relator's name on the sample and official ballots, and that the district court compelled him to insert the same,

which he did by *writing* in the relator's name without any designation of the office for which he was a candidate. The clerk evidently did not regard Boyd county as a part of the district and seems to have refused on that ground. The defendant was not a party to the *mandamus* proceedings, and we have no means of knowing what facts were before the district court, but as the defendant's name was entirely omitted from the ballots and the relator's written therein, it is evident to me that there was not a legal ballot cast in Boyd county for the relator. In a *mandamus* proceeding of that kind there is but little doubt that all the candidates for the particular office in dispute are proper parties defendant in order that they may protect their rights. The question would then be contested and cases determined on their merits. An *ex parte* order is granted almost as a matter of course and is entitled in a case like that at bar to but little consideration. The uniform rule adhered to by this court from the first has been to deny the writ of *mandamus* unless the right is *clear.* It must be free from doubt. Now, will any one say, in view of all the facts, that the relator's right to the seat is free from doubt? I think not. It is not a question of the success of one party or another. There is a principle underlying all questions of this kind that the will of the people as expressed through the ballot box shall govern.

This court from the first has compelled the counting of votes cast in pursuance of law in any legal subdivision of the state. The trouble with this case is, there was no representative district created either in fact or in law in which any votes were cast in Boyd county for the relator. There is no pretense that the records of the territory of Boyd county were kept in Knox county; that any taxes were ever levied there, or any jurisdiction of any manner or kind ever exercised, or attempted to be exercised, by the authorities of Knox county. All these things were done by Holt county under a colorable annexation of that county

to Holt. For seven years the jurisdiction of Holt county was undisputed. The legislature itself, in 1890, permitted a member to retain his seat who was a resident of Boyd county and who was elected by the joint votes of Holt and the territory of Boyd county, and that is the district to which Boyd county belongs. Here was annexation in fact under the forms of law. I believe the election in Holt county, in 1883, for the annexation of Boyd county, was held in pursuance of law, and if it was material it could readily be so demonstrated, but, in my view, it is not in this case material. No one will contend that a change in an election district, made in pursuance of apparent authority and an election held thereunder, can be treated as void. To illustrate: In 1860 a large part of Dodge county was added to Washington county and Fontanelle, the county seat, absorbed by that county. Now, suppose that a candidate for the legislature in Dodge county, in 1861, had ignored the change and been a candidate from the county of Dodge as it formerly existed, and suppose, including the old territory of Dodge, he had the highest number of votes, would he thereby have been entitled to a seat in the legislature as against his competitor? And would this court, by *mandamus*, have compelled the clerk of Dodge county to have issued a certificate of such election? I think not, because the court in a collateral proceeding, after election, in a contest between opposing candidates, will not pass upon the validity of the act creating the several districts, provided that they have been created under color of the law.

This, so far as I know, is the first attempt of the kind in this state. The sole ground on which the relator claims a right to a certificate is that Boyd county is directly west of Knox, but it is very clear that the territory of Boyd county is not directly west and not unorganized territory, and was, in fact, annexed to another county, and cannot be placed in the same district with Knox without

doing violence to both the letter and the spirit of the law. As well have joined Cedar county to Knox and ask this court to compel the counting of the votes cast for a party in Cedar county in the alleged district composed of Cedar and Knox as in this case.   The house of representatives is the only proper tribunal to examine into all the facts in the case and determine the rights of the parties.   It must ultimately determine the question, and this court is not, in my opinion, warranted in interfering in behalf of the relator, but may safely trust the case to a co-ordinate department of the state government.   I emphatically protest against the findings and judgment in this case, as in my view they are unwarranted by either the pleadings or proof, and are calculated to forestall the action of the house of representatives.   I think the writ should be denied.*

*For majority opinion see *post*, p 91.

