Walter SKELTON, Director for Revenues,
Arkansas Department of Finance and
Administration *v.* FEDERAL EXPRESS
CORPORATION

75-130                                   531 S.W. 2d 941

Opinion delivered January 19, 1976
[Rehearing denied Feb. 23, 1976.]

*James R. Cooper, Robert G. Brockman, James R. Eads, Jr.,* and *Harlin R. Hodnett,* for appellant.

*Frank L. Watson* and *Paul F. Henson,* for appellee.

ELSIJANE T. ROY, Justice. This is an action for declaratory judgment, and the parties have stipulated to most of the facts. Appellee, Federal Express Corporation, is an interstate air carrier of small packages and freight, organized under the laws of the State of Delaware with its principal place of business in Tennessee, and licensed in Arkansas as a foreign corporation.

One relevant section of the stipulation reads as follows:

On February 14, 1975, the Department of Finance and Administration audited Plaintiff's personal property which consisted of eighteen Falcon jet aircraft and that these jet aircraft were located on the premises of Little Rock Airmotive, Inc.; that the aircraft were delivered to the Plaintiff in states and countries other than Arkansas; that the said aircraft were transported in interstate commerce to Little Rock, Arkansas, where each aircraft received necessary and substantial modifications to its body and structure before it could be used in Plaintiff's interstate air carrier operations; that Plaintiff's property was not in Arkansas for profit; the property in question had not been placed in service in Arkansas.

Other relevant facts stipulated are that:

Appellee has never performed any intrastate business in Arkansas; there is no dispute as to the amount of the assessment or rate of taxation; and the aircraft, while in Arkansas, received extensive modifications, and as each aircraft was completed, it was delivered to appellee's principal place of business in Memphis, Tennessee. Production time for the modification process was approximately fifty days for each aircraft.

The parties agreed that the issues involved in this controversy should be determined by declaratory judgment.

Roger Frock, general manager and senior vice president of Federal Express Corporation, testified that when the air-

craft were purchased and initially brought into Arkansas they were not involved in carrying freight. In most cases they were brought in by the seller under a ferry package, with very rudimentary equipment in them, just enough to allow them to safely fly into Arkansas, but they were not equipped, could not have handled freight. During the retention of the aircraft in Arkansas, Federal Express Corporation did exercise ownership rights or power incident to the ownership of the aircraft and contracted with Little Rock Airmotive for extensive modification of each aircraft. He testified Federal Express Corporation's route goes from Memphis to Little Rock to Houston to San Antonio, so it is very likely that some of those eighteen aircraft did make stops in Little Rock over the course of being in revenue service. Mr. Frock stated the airplanes were not used in interstate operations prior to modification.

The trial court held that the tax assessment was illegal and should be set aside. From the court's decree comes this appeal.

The Arkansas Compensating Tax Act provides in Ark. Stat. Ann. § 84-3105(a) (Repl. 1960) the following:

(a) There is hereby levied and there shall be collected from every person in this State a tax of excise for the privilege of storing, using or consuming, within |the State, any article of tangible personal property, after| the passage and approval of this Act |§§ 84-3101 — 84-3128|, purchased for storage, use or consumption in this State at the rate of three per centum (3%) of the sales price of such property. This tax will not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this State until the transportation of such article has finally come to rest within this State or until such article has become commingled with the general mass of property of this State. This tax shall apply to the use, storage or consumption of every article of tangible personal property, except as hereinafter provided, irrespective of whether the article or similar articles are manufactured within the State of Arkansas

or are available for purchase within the State of Arkansas, and irrespective of any other condition.

For the aircraft to be subject to the tax they must have been purchased for use or storage in the State and to have finally come to rest within the State.

The stipulation and the testimony clearly reflect that at the time of the purchase appellee intended to bring the aircraft into the State for extensive modification.

Appellee strongly contends that the aircraft were not purchased for use in the State but for use in its interstate operations. This contention is found to be without merit in light of the definition of the term "use":

> The term "use" means and includes the exercise of any right or power over tangible personal property incident to the ownership or control of that property, except that it shall not include the sale of that property in the regular course of business. Ark. Stat. Ann. § 84-3104(c) (Repl. 1960).

Retention of the aircraft within the State of Arkansas alone constitutes sufficient use to support the appellant's assessment. *Flying Tiger Line* v. *State Board of Equalization*, 157 Cal. App. 2d 85, 320 P. 2d 552 (1958); *Pacific Telephone and Telegraph Company* v. *Gallagher*, 306 U.S. 182, 59 S. Ct. 396, 83 L. Ed. 595 (1939). In addition to the aircraft being retained in Arkansas for a period of approximately 50 days appellee contracted with an Arkansas firm for modifications to be carried out on the planes. This is an exercise of a right over the aircraft incident to the ownership or control of same. Exercise of these ownership rights constitutes a taxable "use" of the aircraft within the State.

The aircraft were also stored in the State of Arkansas. In Ark. Stat. Ann. § 84-3104(b) (Repl. 1960), the term "storage" is defined as " . . . any keeping or retention in this State of tangible personal property purchased from a vendor for any purpose, except sale or subsequent use solely outside this State." The aircraft were retained in the State for ap-

proximately 50 days, and their subsequent use is not solely outside this State since appellee makes deliveries and maintains a freight stop in Little Rock.

Regardless of the ultimate use of the aircraft the use and storage in the case at bar are taxable intrastate events, separate and apart from interstate commerce.

In *Flying Tiger Line* v. *State Board of Equalization,* supra, the aircraft which were the subject of this controversy were to become instrumentalities of interstate commerce after they had been flown into California. The court upheld the use tax upon the aircraft because of their use and/or storage prior to becoming instrumentalities of interstate commerce and stated:

> We think there was a taxable moment when the former [speaking of the seven aircraft] had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use — retention and exercise of the right of ownership, respectively — was effective.

The language used here is almost identical with that used in *Pacific Telephone and Telegraph Company* v. *Gallagher,* supra, wherein the United States Supreme Court determined that retention of certain tangible personal property in California constituted an exercise of a right of ownership which subjected it to taxation even though the ultimate use of the property was in the company's interstate system.

As to the question of whether the aircraft "finally came to rest" within this jurisdiction after having been shipped via interstate commerce to Arkansas, numerous cases uphold state taxation of articles of tangible personal property during interruption in interstate shipment if the interruption is not to "facilitate interstate shipment or to save the property from the dangers of its journey." If the interruption does not meet the above test the courts have concluded that interstate shipment has ceased and the goods are within the taxable jurisdiction of the state where they are found.

The United States Supreme Court cases on this issue are reviewed in *Calvert* v. *Zanes-Ewalt Warehouse, Inc.*, 502 S.W. 2d 689 (Texas) (1973). In *Calvert* the court said:

> * * * Any interruption of the movement of commodities at an intermediate point between origin and final destination which is not incidental to the transportation or the use of the means of transportation (or being so incidental, is used or extended for the purposes of the owner not incidental to the transportation or the means used therefor) breaks the continuity in transit and subjects the shipment to local taxation at the point of interruption.

The extensive modification of the jets in Arkansas was in no way "incidental" to the transportation of the aircraft (the aircraft were capable of being flown directly to Memphis), but it was for the purposes of the owner. So here the aircraft left the stream of commerce and "finally came to rest" in Arkansas and consequently were subject to taxation at this point. *General Oil Co.* v. *Crane*, 209 U.S. 211, 28 S. Ct. 475, 52 L. Ed. 754 (1908), and *Bacon* v. *Ill.*, 227 U.S. 504, 33 S. Ct. 299, 57 L. Ed. 615 (1913).

Concerning appellant's contention of double taxation, Arkansas has enacted the Multistate Tax Compact, Ark. Stat. Ann. §§ 84-4101 — 84-4106 (Supp. 1973), which provides in part:

> Each purchaser liable for a use tax on tangible personal property shall be entitled to full credit for the combined amount or amounts of legally imposed sales or use taxes paid by him with respect to the same property to another state and any subdivision thereof.

In light of this tax compact, the State of Tennessee at the appropriate time will make a proper determination of the tax credit due appellee herein. Therefore, we find appellee is not subjected to double taxation because of the Arkansas assessment.

Furthermore, since the aircraft were not instrumen-

talities of interstate commerce nor were they in the stream of commerce at the time of taxation, the commerce clause of the Federal Constitution has not in any manner or respect been violated by the appellant's assessment of the tax on the aircraft.

Reversed.

JONES and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. I disagree with the majority's interpretation of Ark. Stat. Ann. § 84-3105(a) (Repl. 1960). As interpreted it adds $18,500 to the cost of any modifications that Little Rock Airmotive, Inc., makes to any such Falcon Jets even though the costs of the modification may be $1,000 or less. I doubt that Little Rock Airmotive can long stay in business with that kind of tollgate at its front door.

The stipulated facts show that Federal Express Corporation is homebased in Memphis, Tennessee where it is engaged in interstate commerce. The stipulated facts also show that the aircraft here were stopped off enroute to Memphis to modify or fabricate the planes to meet their intended use when they arrive in Memphis. Thus, if the planes are taxable under the facts here it would not make any difference to this state's ability to tax, that the planes were first flown to Memphis and then returned.

Under the majority's interpretation of the statute, *supra*, any plane flown into Arkansas for fabrication from anyone of the five states that does not have a gross receipts or use tax will be subject to use tax by Arkansas. Thus, as I view the matter the tax here levied is purely and simply a tax levied upon commerce. Little Rock Airmotive could not exist without such commerce — that is the very nature of its business and there are obviously not enough locally owned aircraft to keep it in business.

For the reasons stated, I respectfully dissent.

JONES, J., joins in this dissent.