FEDERAL EXPRESS CORPORATION and
NORTH AMERICAN CAR CORPORATION *v.*
Walter SKELTON, Commissioner of Revenues,
Department of Finance and Administration,
State of Arkansas

78-79 & 78-83                                    578 S.W. 2d 1

Opinion delivered February 26, 1979
(In Banc)
[Rehearing denied April 2, 1979.]

*Paul F. Henson* and *Frank L. Watson* of *Waring, Cox, James & Allen,* Memphis, Tenn., for appellants.

*James R. Eads, Jr., Robert G. Brockmann, Joseph V. Svoboda, Barry E. Coplin* and *H. Thomas Clark, Jr.,* by: *Jack East III,* for appellee.

MARION S. GILL, Special Justice. This case is a sequel to *Skelton* v. *Federal Express Corporation,* 259 Ark. 127, 531 S.W. 2d 941 (1976). Reference is made to that decision for the relevant facts concerning Federal Express Corporation. Following the decision of this Court in the foregoing case, but before the mandate was filed with the Pulaski Chancery Clerk, on February 16, 1976, the Governor signed into law Act 1237 of 1975, Extended Session, the provisions of which constitute the subject matter of this controversy. By said Act the Arkansas Compensating Tax Act, Ark. Stats. 84-3105(a) was amended to read as follows:

Section 1. (a) There is hereby levied and there shall be collected from every person in this State a tax or excise for the privilege of storing, using or consuming, within the State, any article of tangible personal property, after the passage and approval of this Act (§ 84-3101 — 84-3128), purchased for storage, use or consumption in this State at the rate of three percent (3%) of the sales price

of such property. This tax will not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this State until the transportation of such article has finally come to rest within this State or until such article has become commingled with the general mass of property of this State. This tax shall apply to the use, storage or consumption of every article of tangible personal property, except as hereinafter provided, irrespective of whether the article or similar articles are manufactured within the State of Arkansas or are available for purchase within the State of Arkansas, and irrespective of any other condition. *Provided however, that the tax levied in this Act shall not apply to aircraft, aircraft equipment, and railroad parts, cars, and equipment or to tangible personal property owned or leased by aircraft, airmotive or railroad companies brought into the State of Arkansas solely and exclusively for (i) refurbishing, conversion or modification within this State and is not used nor intended for use in this State, and the presence of such tangible personal property within this State shall not be construed as storage, use or consumption in this State for this Act, if such aircraft, aircraft equipment, and railroad parts, cars, and equipment or tangible personal property, is removed from this State within sixty (60) days from the date of the completion of such refurbishing, conversion, or modification, or (ii) storage for use outside or inside the State of Arkansas regardless of the length of time any such property is so stored in the State of Arkansas. If any such property is subsequently used in the State of Arkansas, the tax levied by this Act shall be and become applicable to the property so used in Arkansas. Provided further, that nothing in this subsection is intended to exempt from taxation any materials used or services furnished in the refurbishing, conversion, or modification of such property in this State which is subject to the Arkansas Gross Receipts Tax.* (Emphasis added)

Section 2. The General Assembly hereby determines that it was not the intent of Act 487 of 1949 (Ark. Stats. §§ 84-3101 — 84-3128), as amended, to impose the compensating use tax upon aircraft, aircraft equipment, and railroad parts, cars and equipment, or to any tangible personal property owned or leased by aircraft, air-

motive or railroad companies, as provided in Section 5(a) of Act 487 of 1949, as amended, and as classified by this Act, and any claim that the State of Arkansas now has for collection of compensating use taxes upon any such aircraft, aircraft equipment and railroad parts, cars and equipment, or to tangible personal property owned or leased by aircraft, airmotive, or railroad companies brought into the State of Arkansas solely and exclusively for refurbishing, conversion, or modification shall not be collected, whether the same is pending in the Revenue Services Division of the Department of Finance and Administration or is pending and unpaid as a result of any court litigation or court decision of this State, it being the intent of the General Assembly that the State of Arkansas should not pursue collection of any claim now pending or the execution of any court order with respect to any such claim for the collection of compensating use taxes upon such property. Provided, however, that no person shall have a claim against the State of Arkansas for any compensating use tax paid to the State of Arkansas on or before the effective date of this Act with respect to such tangible personal property.

On August 9, 1977, after the remand in the foregoing case to the Pulaski Chancery Court, the Commissioner of Revenues filed an "Amended Petition for Supplemental Relief" and challenged the constitutionality of Section 2 of Act 1237 of 1975. Federal Express Corporation demurred to this petition on the grounds that the Court lacked subject matter jurisdiction and that the Commissioner lacked the capacity to challenge the constitutionality of a legislative enactment. The Pulaski Chancery Court held that the Commissioner had the necessary authority to raise the constitutional issue involved, that Section 2 of Acts 1237 of 1975 violates Art. 12, Section 12, of the Constitution of Arkansas, and awarded judgment to the Commissioner pursuant to the mandate of this Court.

Appellant, North American Car Corporation, hereafter referred to as N A C, is a Delaware corporation authorized to transact business in Arkansas. It is primarily engaged in the

business of leasing various types of railroad cars to railroad companies. In order to maintain its railroad cars in proper working condition N A C operates a repair facility in Texarkana, Arkansas. N A C maintains an inventory of repair parts (consisting primarily of railroad car wheels and axles) at its Texarkana facility to make the necessary repairs to railroad cars when needed. Ninety per cent (90%) of the wheels and axles installed upon roalroad cars repaired at Texarkana are wheels and axles which have been removed from used cars. The remaining ten per cent (10%) are purchased by N A C outside of Arkansas and brought to the Texarkana facility as needed and are the subject of this action. Following the assessment of the Compensating Use Tax on parts in question, N A C instituted an action for a declaratory judgment in the Chancery Court of Pulaski County, and, among other things, alleged Appellee's assessments to be violative of Art. XVI, Section 13, Constitution of Arkansas in that the property upon which the assessment was made had been exempted, or was not subject to the Compensating Use Tax by reason of Section 2 of Act 1237 of 1975. Appellee alleged that Section 2 of Act 1237 was unconstitutional. The Chancellor found the assessment to be valid; and that the Commissioner had the "standing" to raise the constitutional issue asserted; that Section 2 of Act 1237 was unconstitutional as being violative of Section 2 of Art. 4, Section 12 of Art. 12 and Amendment 14 of the Constitution of Arkansas.

From the Chancellor's decrees in the foregoing cases, Federal Express and N A C bring this appeal. On joint motion of the parties these cases have been consolidated due to similar issues of law presented in both cases. For reversal Appellants contend:

I. Appellee, in his capacity as Director for Revenue, is charged with the administration of the act in question and lacks the requisite standing or authority to challenge its constitutionality.

II. Section 2 of Act 1237 of 1975, extended session, constitutes a valid exercise of legislative power under Article 12, Section 12, of the Constitution of Arkansas.

III. Section 2 of Act 1237 of 1975, extended session, constitutes a valid exercise of legislative power within the limitations imposed by the 14th Amendment of the Constitution of The United States.

IV. Section 2 of Act 1237 of 1975, constitutes a valid exercise of legislative power under the provisions of Article 4, Sections 1 and 2 of the Constitution of Arkansas.

V. The replacement parts were not purchased for "storage, consumption or use" in Arkansas.

VI. The railroad replacement parts were purchased for resale and therefore exempt from the tax.

VII. The replacement parts are exempt from the use tax because such property is exempt from tax under the Arkansas Gross Recepits Tax Act.

VIIII. Act 1237 of 1975 exempts railroad parts from the Use Tax Act.

IX. Act 1237 is prospective as to North American Car because no use tax was assessed against it until after Act 1237 was signed into law.

Appellants first assert that the Appellee has no standing or authority to challenge the constitutionality of a legislative enactment. This question is one of first impression for this Court. We recognize the general rule to be that public policy would prohibit an executive branch official from challenging a legislative act based upon his interest as the official charged with administering the statute. However, there is a logical exception to this rule which allows a public officer to question the constitutionality of a legislative enactment where public rights have matured and public interest is involved. *Mower Board of Commissioners* v. *Board of Trustees of P.E.R.A.*, 136 N.W. 2d 671 (Minn. 1965); *Fulton Foundation* v. *Wisconsin Department of Taxation*, 109 N.W. 2d 285 (Wis. 1961); *Blue Earth County Welfare Department* v. *Cabellero*, 225 N.W. 2d 373 (Minn. 1974); *Wachusett Regional School District Committee* v. *Erickson*, 228 N.E. 2d 62 (Mass. 1067).

In at least four previous instances, this court has held that an officer of the executive branch cannot be forced to comply with the provisions of an unconstitutional enactment of the State Legislature. *Little Rock & Fort Smith Ry.* v. *Worthen, et al,* 46 Ark. 312 (1885); Writ of error dismissed, 120 U.S. 97, 30 L. Ed. 588; *Hodges* v. *Dawdy,* 104 Ark. 583, 149 S.W. 656 (1912); *Rison et al* v. *Farr,* 24 Ark. 161 (1865); *Eason* v. *State,* 11 Ark. 481 (1851). The above cases establish the right of an executive official to disobey an unconstitutional enactment of the General Assembly. If he has the right to disobey an unconstitutional enactment, he should have the right to question the constitutionality of a statute where the public interest is involved. In *Fulton Foundation* v. *Wisconsin Dept. of Taxation,* 108 N.W. 2d 312 (Wis. 1961), the Supreme Court of Wisconsin denied that the Wisconsin Revenue Department had the necessary standing to question the constitutional validity of a particular tax exemption statute. On rehearing, however, the Wisconsin high court reversed this position and gave the following reasons:

> "In view of the forceful and persuasive arguments advanced by the attorney general in the brief filed by the department in support of its motion for rehearing, we have reconsidered our original holding that a question of whether a particular tax exemption denies the equal protection of the laws, is not of great public concern.
>
> Such original determination had been motivated by the view that, while the granting of a particular tax exemption by the legislature might be of particular interest to other taxpayers to whom the exemption was not made applicable, it was not of great interest to the public at large. Upon further reflection we are convinced such issues should be held to present a question of great public interest. This is because the extending of special privileges by way of discriminating tax exemptions, which deny the equal-protection-of-the-laws requirement of the Fourteenth Amendment, have a tendency to undermine the faith of citizens in the integrity of their state government. Therefore, we withdraw that part of the original opinion which determined that the equal-protection-of-the-laws issue was not of great public con-

cern, and now hold that the department should be permitted to raise such constitutional issue.

There is a further reason of policy for holding that the department should be permitted to raise this particular issue of constitutionality. This is that unless the department is permitted to do so there is little likelihood that any taxpayer will. The situation is different with respect to the enactment of a statute imposing a new tax which denies the equal protection of the laws. There the constitutional issue is very likely to be raised by the taxpayer against whom an attempt is made to assess and collect the tax."

As will be noted in the points discussed below, Appellee has raised certain constitutional provisions under which he is the most proper and logical party to assert their violation by the act in question.

Therefore, we hold that a public official may question the constitutionality of a legislative enactment where public interests or public rights are involved, as distinguished from individual rights, and no enabling legislation is necessary. Further, we hold the requisite public rights and public interest to exist in this case.

We find no merit in Appellants' contentions II, III and IV. Section 2 of Act 1237 of 1975 prohibits Appellee (an executive branch official) from collecting from certain specified taxpayers use taxes which accrued under the 1949 Act and prior to the enactment of this Act. Art. 12, Section 12, of the Constitution of Arkansas, provides:

"Except as herein otherwise provided, the State shall never assume or pay the debt or liability of any county, town, city, or other corporation whatever, or any part thereof, unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense. *Nor shall the indebtedness of any corporation to the State ever be released or in any manner discharged save by payment into the public treasury.*" (Emphasis added)

The courts of other states have been unanimous in holding that a law or ordinance which attempts to release a tax liability, obligation or indebtedness violates provisions of their constitutions. *Ollivier et al* v. *City of Houston*, 54 S.W. 943 (Tex. 1900); *Community Public-Service Company* v. *James et al*, 167 S.W. 2d 588 (Tex. 1942); *Werner* v. *Riebe et al*, 296 N.W. 422 (N.D. 1941); *Fontenot, Director of Revenues* v. *Hurwitz-Mintz Furniture Co. et al*, 7 So. 2d 712 (La. 1942); *Graham Paper Co.* v. *Gehner et al*, 59 S.W. 2d 49 (Mo. 1933); *State* v. *Pioneer Oil and Refining Co. et al*, 292 S.W. 869 (Tex. 1927); *City of Louisville* v. *Louisville Ry. Co.*, 63 S.W. 14 (Ky. 1901); *Daniels* v. *Sones*, 157 So. 2d 626 (Miss. 1962); *Sloan* v. *Calvert*, 497 S.W. 2d 125 (Tex. 1973); *Smith* v. *State*, 420 S.W. 2d 204 (Tex. 1967); *Ivester* v. *State ex rel. Gillum*, 83 P. 2d 193 (Okla. 1938). As the Texas Court stated in *Smith* v. *State,* supra:

A tax that has been levied and has become a liability matured under a tax statute is an indebtedness or obligation within the meaning of this provision of the Constitution.

We hold a matured tax claim to be an "indebtedness" within the meaning and context of Article 12, Section 12, of the Arkansas Constitution, and that Section 2 of Act 1237 is in violation of this provision of the Arkansas Constitution.

The act in question also violates Amendment 14 to the Constitution of Arkansas, which provides:

"The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

In *Whittabker* v. *Carter*, 238 Ark. 1074, 386 S.W. 2d 498 (1965), we held that an enactment violates Amendment 14 when it is retrospective in nature so as to exclude persons who would otherwise be subject to the operation of the enactment.

Section 2 of Act 1237 operates retrospectively to *include* within its operation only those delinquent taxpayers who have failed and refused to pay the tax. Those who have paid the tax are excluded from the operation of the law simply

because they paid the tax. The exclusion of those who were attempting to comply with the law at the time the tax matured, in effect, penalizes them because of their compliance.

Also, we find that Section 2 of Act 1237 violates Section 2, Article 4 of the Constitution of Arkansas, which provides:

> No person, or collection of persons, being one of these departments (Legislative, executive and judicial), shall exercise *any power* belonging to either of the others, except in instances hereinafter expressly directed or permitted. (emphasis added)

Thus, the Constitution of Arkansas provides specifically that the legislature may not exercise a judicial function in any case not expressly authorized by the Arkansas Constitution. We find no provision, and no such provision has been cited, in the Arkansas Constitution which authorizes the legislature to retroactively annul a decision of this court involving matters of public interest. Certainly, the General Assembly has the power to prospectively amend a statute, and threrby render a prior judicial decision interpreting that statute inapplicable, but not retrospectively as in the case before us. In *Sidway* v. *Lawson*, 58 Ark. 117 (1893) this Court held:

> The legislature cannot, by the enactment of a retrospective statute, exercise a power in its nature clearly judicial. *It is prohibited from doing so by the constitution.* The powers of the government are divided into three distinct departments, the legislative, executive and judicial; and every "person or collection of persons, being one of these departments, is prohibited from exercising any power belonging to either of the others," except wherein it is *expressly* directed ot permitted by the constitution. (emphasis added)

Our government is composed of three separate independent branches: legislative, executive and judicial. Each branch has certain specified powers delegated to it. The legislative branch of the State government has the power and responsibility to proclaim the law through statutory

enactments. The judicial branch has the power and responsibility to interpret the legislative enactments. The executive branch as the power and responsibility to enforce the laws as enacted and interpreted by the other two branches. The "Separation of Powers Doctrine" is a basic principle upon which our government is founded, and should not be violated or abridged. Section 2 of Act 1237 reads in part as follows:

> Section 2. The General Assembly hereby determines that it *was not the intent of Act 487 of 1949,* as amended, to impose the compensating use tax upon aircraft, aircraft equipment, and railroad parts, cars and equipment, or to any tangible personal property owned or leased by aircraft, airmotive or railroad companies, as provided in Section 5 (a) of Act 487 of 1949, as amended . . . . . (emphasis added)

Section 5 of Act 1237 states in part:

> Section 5. Emergency. *It is hereby found and determined by the General Assembly that it was not the intent of Act 487 of 1949, as amended, to impose the compensating use tax upon aircraft, aircraft equipment, and railroad parts,* cars and equipment, or to tangible personal property owned or leased by aircraft, airmotive or railroad companies, brought into this State solely and exclusively for (i) the purpose of refurbishing, conversion, or modification or (ii) for storage pending shipment for use outside of the State of Arkansas regardless of the length of time any such property is stored in the State of Arkansas, that recent court decisions have construed said Act 487 of 1949, as amended, to impose and require the collection and payment of compensating use taxes upon such property; and that the immediate passage of this Act is necessary to clarify the legislative intent and to provide that any claim the State of Arkansas may now have outstanding or which is due the State of Arkansas as a result of the court decisions for the collection of any such compensating use tax upon aircraft, aircraft equipment, and railroad parts, cars, and equipment, or to tangible personal property owned or leased by any aircraft, airmotive or railroad companies.

The relevant provisions of Act 487 of 1949, the Arkansas Use Tax Act of 1949, were interpreted by this Court in *Skelton v. Federal Express Corporation*, 259 Ark. 127, 531 S.W. 2d 941 (1976). Sections 2 and 5 of Act 1237 are a clear attempt by the 1975 General Assembly to interpret a law enacted by the 1949 General Assembly after this Court has interpreted and applied that law. We think this violates the Separation of Powers principle. The legislature can prospectively change the tax laws of this state, within constitutional limitations, but it does not have the power or authority to retrospectively abrogate judicial pronouncements of the courts of this State by a legislative interpretation of the law. The 1975 legislature cannot state what the 1949 legislature intended when it enacted Act 487 of 1949; such interpretation falls exclusively within the province of the judicial branch. For the 1975 legislature to declare the intent of a prior legislature and make the declaration retroactive so as to affect an interpretation already rendered by the courts is an abuse of legislative power which violates the Separation of Powers Doctrine. *Richardson v. City of Jefferson*, 134 N.W. 2d 528 (Ga. 1965); *State ex rel. Norton v. Van Camp*, 54 N.W. 113 (Neb. 1893); *Carolina Glass Co. v. State*, 69 S.E. 391 (S.C. 1910); *Richardson v. Hare*, 160 N.W. 2d 883 (Mich. 1968); *Walker v. United States*, 83 F. 2d 103 (8th Cir. 1936); *Road Builders, Inc. of Tennessee v. Hawes*, 187 S.W. 2d 287 (Ga. 1972).

In addition to the preceding points for reversal, N A C also raised points V through IX, which are matters of statutory construction.

The Arkansas Compensation Tax Act (Ark. Stat. Ann. Section 84-3105 [a]) provides the following:

There is hereby levied and there shall be collected from every person in this State a tax or excise for the privilege of storing, using or consuming, within the State, any article of tangible personal property, after the passage and approval of this Act [§§ 84-3101 — 84-3128], purchased for storage, use or consumption in this State at the rate of three per centum (3%) of the sales price of such property. This tax will not apply with respect to the storage, use or consumption of any article of

> tangible personal property purchased, produced or manufactured outside this State until the transportation of such article has finally come to rest within this State or until such article has become commingled with the general mass of property of this State. This tax shall apply to the use, storage or consumption of every article of tangible personal property, except as hereinafter provided, irrespective of whether the article or similar articles are manufactured within the State of Arkansas or are available for purchase within the State of Arkansas, and irrespective of any other condition.

The stipulation of the parties reflects that the items upon which the use tax has been assessed are railroad car parts kept in inventory at Texarkana until needed by N A C to replace work or broken parts on existing railroad cars owned by N A C. These acts constitute sufficient "use" and "storage" within Arkansas to support the Appellee's assessment. *Skelton* v. *Federal Express,* supra; *Flying Tiger Line* v. *State Board of Equalization,* 157 Cal. App. 2d 85, 320 P. 2d 552 (1958); *Pacific Telephone and Telegraph Company* v. *Gallagher,* 306 U.S. 812, 59 S. Ct. 396, 83 L. Ed. 595 (1939). Installation of the parts in the railroad cars would be a taxable "use" because it is an exercise of a right or power over tangible personal property incident to the ownership of the property. *Skelton* v. *Federal Express,* supra. Further, the parts were retained in inventory for an average of 132 days, which constitutes "storage" as that term is used in tiis Act. Following their storage, the parts were not subsequently "used" outside this State since the parts were installed in N A C's cars in Arkansas. The wheels and axles which are the subject of this litigation are new wheels and axles purchased from vendors outside of Arkansas and shipped to Arkansas for the purpose of being installed in N A C's railroad cars being repaired. The stipulated facts clearly indicate that the parts in question were purchased by N A C for "storage, use or consumption" in this State as those terms are defined in Ark. Stats. Ann. Section 84-3104.

We find no merit to Appellant's contention that these replacement parts were purchased for resale and therefore are exempt from the tax. The term "sale" is defined by Ark.

Stats. Ann. Section 84-3104(f) as "any transaction whether called leases, rentals . . .". N A C leases its railroad cars to railroad companies and it claims an exemption from the tax by virtue of these leases. To establish its claim that the repair parts were purchased for "resale" it must show that the repair parts were purchased outside this state, that it is regularly engaged in the business of reselling the goods purchased, and that the parts were purchased for resale. The railroad cars were sold or "leased", but the parts in question were not. The threshold question is whether the items purchased (and taxed) are intended for "resale" as that term is defined in Ark. Stats. Ann. Section 84-1902(c). *Hervey* v. *International Paper Company*, 252 Ark. 913, 483 S.W. 2d 199 (1972). We think not. In *Hervey* v. *Southern Wood Box, Inc.*, 253 Ark. 290, 486 S.W. 2d 65 (1972), a similar argument was made to this Court. In that case wooden cases were purchased by Coca Cola Bottling Company and used to transport beverages to its customers. Coca Cola claimed the boxes to be exempt but this Court upheld the tax assessment against Coca Cola because the boxes were intended for Coca Cola's own use and not sale. In that case this Court said:

> We do not interpret the broad statutory definition of a sale to include every transaction in which there is a transfer of possession, for a consideration. Ark. Stat. Ann. § 84-1902(c). The statute must be read as a whole. If the reference to a transfer of possession were applied literally in every instance, absurd results would follow. *For instance, a company engaged in renting automobiles would not be required to pay a sales tax upon its purchase of cars, because it would be buying them for resale. Similarly, a company selling butane gas in heavy iron bottles would be reselling the bottles, even though its customers were required to return them. It is our duty to give the statute a reasonable construction, not an absurd one.* (emphasis added)

Under the holdings of this case the repair parts were consumed and used by N A C in its business and not "resold" within the definition of that term as used in the Use Tax Act or the Gross Receipts Tax Act.

In point IX for reversal, N A C contends that Act 1237 of

1975 is prospective as to it and not retroactive, as in the case of Federal Express Corporation. The use tax assessments pertaining to N A C are for two audit periods, from November 1, 1970, through February 28, 1973, and from March 13, 1973, through March 31, 1975. As previously stated, this Act was signed into law on February 16, 1976. N A C argues that no "claim was pending" at the time the Act became law, because proper "Notices of Assessment" had not been given at that time. First, it does not appear that the issue relating to the validity of the Notices of Assessment was raised in the lower Court, and, therefore, cannot be raised for the first time on appeal. Second, we hold that the assessments due for the periods involved were matured and payable (notwithstanding the status of the "Notice of Assessments"), so far as they relate to this case, at the time the Act became law, and, therefore, we hold the Act to be retrospective as to these periods and not prospective as contended by N A C. The State has a claim for taxes from the date the taxes are due and payable by applicable law. *Smith* v. *State,* supra. Ark. Stats. Ann. Section 83-3109(a) provides that the use tax is "due and payable to the Commissioner monthly on or before the fifteenth day of each month", and subsection (b) requires each person covered by the law to report and remit the applicable tax on or before the fifteenth day of the month for the prior month's taxable purchases. Thus, so far as it relates to this case, the claim of the State of Arkansas matured on the sixteenth day of every month for the prior month's taxes during the period in question.

The 1975 Amendment to Act 1237 exempts from the operation of the tax certain specified property that would otherwise come within the operation of the taxing statute. N A C contends (Point VIII) that the 1975 Amendment exempts *all* railroad parts. The Appellee contends that the 1975 Amendment to this Act extends only to railroad parts owned or leased by *railroad companies*. Because of the decisions of this Court pertaining to the other issues raised herein, this final contention of N A C is not relevant to the taxes involved in this case and would relate only to future assessments. N A C does not qualify and cannot be considered a railroad company. However, we see no necessity to decide the question as to whether the exemption enacted by the 1975 Amendment to

Act 1237 extends to all "railroad parts" or only railroad parts "owned or leased by ** railroad companies." This question was not decided by the lower Court and this issue is not properly before this Court.

Affirmed.

BYRD, J., dissents.

HICKMAN, J., not participating.