Mr. John Allen, Director Assessment Coordination Department 1614 West Third Little Rock, Arkansas 72201-1815
Dear Mr. Allen:
This is in response to your request for an opinion on two questions concerning whether Act 1036 of 1997 cured the constitutional defect found by a Pulaski County Chancery Court to exist in Act 1124 of 1993. These acts involve the property tax assessment of motor vehicle inventories. You pose the following questions in this regard:
 1. Would you please give us your opinion as to the constitutionality of Act 1124, as amended?
 2. Should the Assessment Coordination Department advise the county assessors to assess the automobile dealers as they assess other businesses in view of Judge Brantley's Order, or should the assessors use the method of valuation set forth in Act 1124, as amended?
RESPONSE
Question 1 — Would you please give us your opinion as to theconstitutionality of Act 1124, as amended?
In my opinion the act remains constitutionally suspect.
Both the 1997 and 1993 acts are currently codified at A.C.A. § 26-26-1207
(Repl. 1997). The acts set out a procedure for the assessment of motor vehicle dealer inventory. The statute currently reads as follows:
 (a) The General Assembly recognizes that motor vehicles are unique in regard to the procedure for assessment of personal property taxes, registration and titling, and payment of sales taxes and that there is a correlation between sales of motor vehicles by motor vehicle dealers and the valuation of motor vehicle inventory.
 (b) The method of determining the average value of inventory of motor vehicle dealers in accordance with §§ 26-26-1201 and 26-26-1203(b) shall be as provided in this section.
 (c) The assessment of motor vehicle inventories of motor vehicle dealers shall be determined by calculating the monthly average of the number of [retail] sales of new and used motor vehicles by the dealer and multiplying the average by the unit inventory value.
 (d) The unit inventory value shall be based on the typical new and used car values by name of manufacturer as set forth in the Commercial Personal Property Appraisal Manual published in the year prior to the year of assessment by the Assessment Coordination Division of the Arkansas Public Service Commission. [Former language supplied and emphasized.]
The only change the 1997 act made to the 1993 act was to remove the bracketed word "retail" from the statute. The 1997 act was approved on April 2, 1997, but without an emergency clause, was effective on August 1, 1997. See Op. Att'y Gen. 97-144. Between the time the act was approved and time of its efficacy, the Pulaski County Chancery Court (Fifth Division) rendered a decision that the 1993 act (as it existed prior to the 1997 amendment), was unconstitutional under Arkansas Constitution, art. 16, § 5. See decision in Pulaski County Board of Equalization v.Tucker et al., ENC 93-5690 (order entered July 15, 1997). Two of the chancellor's conclusions of law state respectively that: "Act 1124 does not provide a constitutional method of determining the value of auto dealers inventory in that it values only retail sales, rather than the annual average property held by dealers," and "Act 1124 of 1993 is unconstitutional in that it causes the inventory of automobile dealers to be valued at a rate significantly below that of any other species of property because the correlation between dealer inventory and sales is less than 50%." Id. (Conclusions of Law No. 7 and 8.) You note that no appeal was filed in this case.
The question posed is whether the removal of the word "retail" from the 1993 act operates to cure the constitutional deficiency therein. You ask for my opinion "as to the Constitutionality of Act 1124 as amended." Your general counsel notes that it is her opinion, as well as the opinion of two individuals who testified as expert witnesses in the litigation, that the removal of the word "retail" does not rehabilitate the act.
The chancellor's order, as you note, predated the amendment to the statute. In my opinion, however, the gravamen of the chancellor's decision is that Act 1124 was unconstitutional, not because it based the valuation on "retail" sales as opposed to some other kind of sales, but because the valuation was based upon sales at all, as opposed to the "annual average property held by dealers." The chancellor's decision was not appealed, and thus does not have statewide impact. It was also rendered prior to the amendment of the statute. In my opinion, however, the legal analysis in the chancellor's order supports the conclusion that the 1997 amendment by Act 1036 of 1997 did not sufficiently cure the problem delineated therein. In my opinion, therefore, the statute remains constitutionally suspect.
My predecessor in office addressed a similar question in 1992, a few months prior to the adoption of the original 1993 act. See Op. Att'y Gen. 92-336. In that opinion, the question posed was whether "the legislature is free to distinguish among types of personal property for the purposes of ad valorem tax or assessment." Op. 92-336 at. 1. The answer given was "no." It was stated that although the legislature does have some authority over the assessment of property, or methods for determining the value of property for taxation purposes, the word "value" means "current market value," and, as such, the General Assembly does not have any authority to value property at other than "current market value." It was also stated that the General Assembly may not arrive at a lower value for some species of property. Id. at 1. "It may establish different assessment mechanisms or procedures for different types of property, but the goal and effect of each such procedure must be to arrive at the `current market value' of the property. Additionally, one species of property may not be taxed higher than another species of property of equal value." Id. at 2. See also Arkansas Public Service Commission v.Pulaski County Equalization Board, 266 Ark. 64, 582 S.W.2d 942 (1979) andSummers Chevrolet v. Yell County, 310 Ark. 1, 832 S.W.2d 486 (1992). The question of whether a valuation based on "sales" as opposed to "retail sales" results in a lower valuation of motor vehicle inventories would depend to some extent on the factual development of this issue at a trial of the facts. This method of valuation, however, does not appear to be designed to reach the "current market value" of the property held by dealers. In addition, Opinion 92-336 concludes, as does the chancellor's order, that Amendment 71 to the Arkansas Constitution does not apply to the assessment of motor vehicle dealer inventories. In my opinion, therefore, previous opinions of this office, as well as the chancellor's order, indicate that constitutional infirmities may remain even after adoption of the 1997 act.
Question 2 — Should the Assessment Coordination Department advise thecounty assessors to assess the automobile dealers as they assess otherbusinesses in view of Judge Brantley's Order, or should the assessors usethe method of valuation set forth in Act 1124, as amended?
Your second question does not present a question of law, but rather, one of executive policy. Your general counsel has indicated her belief that the act, even as amended, is unconstitutional. I have concluded that it remains constitutionally suspect.[1]
It is clear, in my opinion, that an executive officer has the right to disobey an unconstitutional enactment of the General Assembly. FederalExpress Corp., et al., v. Skelton, 265 Ark. 187, 578 S.W.2d 1 (1979). TheSkelton decision, however, limited the right to instances in which public rights have matured and the public interest is involved. Id. at 193. The court cited at least four earlier cases upholding this right, and stated that: "[t]he above cases establish the right of an executive official to disobey an unconstitutional enactment of the General Assembly." Id. at 194. It was stated in one of these cases, however, that: "They do, indeed, incur peril by deciding for themselves in advance of the courts, the unconstitutionality of an enactment. But they are also liable to be punished in damages if they carry into effect an act which violates the fundamental law." The Little Rock and Fort Smith Railway v. R.W.Worthen, Collector, 46 Ark. 312, 325 (1885). The Worthen case involved the power of the "Board of Railroad Commissioners" (consisting of the governor, secretary of state, and auditor) to disregard an act of the general assembly stating that the value of certain railroad property need not be scheduled for assessment. The Board, after receiving the opinion of the Attorney General that the statute was unconstitutional, ignored the enactment, and proceeded to assess the appellant's railway at a sum nearly double what it had returned. The constitutional infirmity was based on Arkansas Constitution, art. 16, § 5, the same provision cited as authority in the Pulaski County Chancery Order you have described. The railroad sued, and the court upheld the right of the Board to disobey the unconstitutional statute stating:
 Now, officers of the executive department are not bound to execute a legislative act, which, in their judgment, is repugnant to the constitution. Their primary allegiance is due to the constitution; and if there be a conflict between the two, the constitution is the higher law, or rather, the supposed law is not a law at all, being null and void.
46 Ark. at 325.
It should be noted, however, that enactments of the legislature are presumed constitutional. Teague v. State, 328 Ark. 724, 946 S.W.2d 670
(1997). Doubts will be resolved in favor of their validity. Id. Again, executive officers "incur peril" by deciding for themselves, without court intervention, the constitutionality of legislative enactments. The decision of whether your agency advises local assessors to comply with, or ignore Act 1124 as amended, or to seek a judicial resolution of the question, is yours to make. I hope the foregoing discussion of the law is helpful to your decision.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] The statutes of this state make it the "Public Service Commission's" duty, with the advice and opinion of the Attorney General, to "answer all questions that may arise in the construction of any statute affecting the assessment, equalization or collection of taxes . . . and [s]uch opinion and the rules, regulations, orders, and instructions of the commission . . . shall be binding upon all officers. . . ." A.C.A. § 26-24-106 (Repl. 1997). See also A.C.A. § 26-24-102 and Potlatch Corp. v. Arkansas, 311 Ark. 145, 842 S.W.2d 32
(1992), citing Tuthill v. Arkansas County Equalization Board,303 Ark. 387, 797 S.W.2d 439 (1990). In 1997 the functions and duties of the Public Service Commission in the administration of the tax laws of this state not specifically retained were transferred by Type 2 transfer to the "Assessment Coordination Department." A.C.A. § 25-28-101
(Supp. 1997).