Raymond Simon, Director Arkansas Department of Education #4 Capitol Mall Little Rock, AR 72201-1071
Dear Mr. Simon:
I am writing in response to your request for my opinion on four questions you have raised in the wake of several opinions I recently issued dealing with the calculation of the uniform rate of tax to support maintenance and operation of the schools pursuant to Ark. Const. amend. 74. You have recited the following background:
 In Opinion No. 2003-014, you opined that if Ark. Code Ann. §
26-80-204(18)(D) (authorizing school district debt service funding supplement payments to be converted to a millage and credited toward the 25-mill uniform rate of tax mandated by Amendment 74) were challenged in Court, in all likelihood that provision of the code would be declared unconstitutional under the logic of Lake View School District v. Huckabee, 351 Ark. 31, 91 S.W.3d 472 (2002). Subsequently, in Opinion No. 2003-031, you opined that the responsibility for levying the uniform rate of tax imposed by Amendment 74 lies with the Quorum Court of the County in which a school district is located. Finally, in Opinion No. 2003-089, you opined that using tax revenue derived from dedicated maintenance and operation millage for payment of debt might also be suspect under one possible interpretation of the Supreme Court's Lake View decision.
 In light of the Lake View decision and your previous opinions, SB 892 was filed during the regular session of the 84th General Assembly. SB 892, if passed, would have amended the Amendment 74 enabling statutes (Ark. Code Ann. §§ 26-80-201 et seq.) in light of the Supreme Court's Lake View decision concerning Ark. Code Ann. § 26-80-204(18)(C), and in light of Attorney General Opinions Nos. 2003-014, 2003-031, and 2003-089. However, SB 892 failed to pass before the end of the regular session, and no other Act amended the code sections dealing with the implementation of Amendment 74.
 Therefore, I now ask your opinion as to the obligations of the Department of Education under Ark. Code Ann. §§ 26-80-201, et seq. In particular, Ark. Code Ann. § 26-80-201(c) requires me to "designate the millage rates proposed to be used to calculate the uniform rate of tax."
Against this backdrop, you have posed the following specific questions:
 1. Pursuant to provisions of ACA 26-80-201 et seq., is the Department of Education ("Department") required to give effect to those portions of the existing Ark. Const. amend. 74 enabling statutes that have been found unconstitutional in the Lake View case?
 2. Is the Department required to credit a school district's debt service funding supplement toward satisfying the Amendment 74 twenty-five (25) mill requirement?
 3. Is the Department required to credit a school district's dedicated maintenance and operation mills toward satisfying the Amendment 74 twenty-five (25) mill requirement?
 4. Are there any other relevant changes in the Department's legal obligations in calculating the total millage necessary for school districts to comply with the uniform rate of tax in consideration of the Arkansas Supreme Court Lake View decision?
RESPONSE
In my opinion, the answer to your first question is "no." With respect to your second question, although I believe it would be constitutionally suspect to credit debt service funding supplements against the uniform rate of tax, no court has yet ruled to this effect. In my opinion, the Department would meet its statutory obligations if it advised the school districts of the possible constitutional problems and left the quorum courts to determine whether to treat the supplements as credits. With respect to your third question, I believe the Department should credit against the uniform rate of tax millages devoted to the purposes set forth at A.C.A. § 26-80-110(b)(1) through (4). However, without further judicial clarification, I am unable to opine whether a district should credit millages devoted to the repayment of revolving loans pursuant to A.C.A. § 16-80-110(b)(5). Again, I believe the Department would fulfill its obligations merely by informing the districts of the constitutional issues and leaving the quorum courts to determine whether to treat such mills as credits. I believe the answer to your final question is "no."
Question 1: Pursuant to provisions of ACA 26-80-201 et seq., is theDepartment of Education ("Department") required to give effect to thoseportions of the existing Ark. Const. amend. 74 enabling statutes that havebeen found unconstitutional in the Lake View case?
No. In Lake View, the Arkansas Supreme Court declared: "We hold that Ark. Code Ann. § 26-80-204(18)(C) violates Amendment 74 of the Arkansas Constitution and is void and of no effect." 351 Ark. at 89. Accordingly, excess debt service millage should not be calculated as a credit against the 25-mill uniform rate of tax mandated by Amendment 74.
Question 2: Is the Department required to credit a school district's debtservice funding supplement toward satisfying the Amendment 74 twenty-five(25) mill requirement?
As you acknowledge in your request, I opined in Ark. Op. Att'y Gen. No.2003-014 that A.C.A. § 26-80-204(18)(D) is constitutionally suspect in authorizing school district debt service funding supplement payments to be converted to a millage and credited toward the 25-mill uniform rate of tax mandated by Amendment 74. I need not here repeat the analysis that led me to that conclusion. At issue is only whether the fact of my having issued that opinion might obligate the Department to ignore the statute in calculating a school district's millage requirement in order to comply with the uniform rate of tax.
In addressing this question, I am guided by certain principles of statutory construction. As the Arkansas Supreme Court noted in Bunch v.State, 344 Ark. 730, 736, 43 S.W.3d 132 (2001):
 Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); ACW, Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770 (1997). If it is possible to construe a statute as constitutional, we must do so. Jones v. State, 333 Ark. 208, 969 S.W.2d 618 (1998). In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. McLeod v. Santa Fe Trail Transp. Co., 205 Ark. 225, 168 S.W.2d 413
(1943). We must also give effect to the legislature's intent, making use of common sense and giving words their usual and ordinary meaning. Kyle v. State, 312 Ark. 274, 849 S.W.2d 935 (1993).
As this passage reflects, a court is the appropriate venue in which to pose a constitutional challenge to legislation. I am an executive, not a judicial, officer, and as such am not situated to declare a statute unconstitutional. You should consequently consider my analysis in Opinion No. 2003-014 not as binding legal authority, but rather as a reasoned opinion that a court faced with the issue might declare A.C.A. § 26-80-204(18)(D) unconstitutional for the same reasons set forth in LakeView. However, pending any such judicial determination, the presumption of the statute's constitutionality will continue to attach.
Notwithstanding this presumption, it is not the case that an executive agency is obliged to conform to a statute until a court declares it unconstitutional. As my predecessor observed in Ark. Op. Att'y Gen. No.99-004:
 [A]n executive officer has the right to disobey an unconstitutional enactment of the General Assembly. Federal Express Corp., et al., v. Skelton, 265 Ark. 187, 578 S.W.2d 1 (1979). The Skelton decision, however, limited the right to instances in which public rights have matured and the public interest is involved. Id. at 193. The court cited at least four earlier cases upholding this right, and stated that: "[t]he above cases establish the right of an executive official to disobey an unconstitutional enactment of the General Assembly." Id.
at 194. It was stated in one of these cases, however, that: "They do, indeed, incur peril by deciding for themselves in advance of the courts, the unconstitutionality of an enactment. But they are also liable to be punished in damages if they carry into effect an act which violates the fundamental law." The Little Rock and Fort Smith Railway v. R.W. Worthen, Collector, 46 Ark. 312, 325 (1885). The Worthen case involved the power of the "Board of Railroad Commissioners" (consisting of the governor, secretary of state, and auditor) to disregard an act of the general assembly stating that the value of certain railroad property need not be scheduled for assessment. The Board, after receiving the opinion of the Attorney General that the statute was unconstitutional, ignored the enactment, and proceeded to assess the appellant's railway at a sum nearly double what it had returned. The constitutional infirmity was based on Arkansas Constitution, art. 16, § 5. . . . The railroad sued, and the court upheld the right of the Board to disobey the unconstitutional statute stating:
 Now, officers of the executive department are not bound to execute a legislative act, which, in their judgment, is repugnant to the constitution. Their primary allegiance is due to the constitution; and if there be a conflict between the two, the constitution is the higher law, or rather, the supposed law is not a law at all, being null and void.
 46 Ark. at 325.
 It should be noted, however, that enactments of the legislature are presumed constitutional. Teague v. State, 328 Ark. 724, 946 S.W.2d 670
(1997). Doubts will be resolved in favor of their validity. Id. Again, executive officers "incur peril" by deciding for themselves, without court intervention, the constitutionality of legislative enactments.
Opinion 99-004, at 5-6.
In accordance with these principles, I believe the Department must itself determine whether it considers crediting school district debt service funding consistent with the provisions of Amendment 74. In my opinion, making this determination, as opposed to merely applying statutory law without further inquiry, is clearly warranted in light of the fact that school funding strongly implicates the public interest. As a practical matter, the Department may elect to simply inform the school districts that crediting debt service funding against the uniform rate of tax may invite a constitutional challenge. As I opined in Opinion No. 2003-031, the ultimate responsibility for levying the uniform rate of tax lies in the quorum court of each county, not in the Department. In my opinion, the Department's obligation is only to advise each school district regarding the millage rate it should levy in order to comply with Amendment 74. To the extent there is confusion regarding what credits against the uniform rate might be constitutionally warranted, I believe the Department could fulfill its statutory duties by informing the districts of this confusion and leaving the quorum courts to determine what course they should follow.
Question 3: Is the Department required to credit a school district'sdedicated maintenance and operation mills toward satisfying the Amendment74 twenty-five (25) mill requirement?
The Code sets forth the designated uses for dedicated maintenance and operation mills at A.C.A. § 26-80-110(b) and allows for a credit of these mills against the uniform rate of tax at A.C.A. § 16-80-204(18)(B). In Ark. Op. Att'y Gen. No. 2003-089, I opined that "although it is in all likelihood constitutional to credit against the uniform rate of tax millages devoted to the purposes set forth at A.C.A. § 26-80-110(b)(1) through (4), it is unclear whether a district could permissibly credit the expenses set forth in subsection (5) — viz., `[r]epaying revolving loans for any of the purposes previously listed.'" I will not here repeat the analysis that led me to these conclusions. In accordance with my previous opinion, I believe it would be appropriate for the Department to credit against the uniform rate of tax the millages used for the purposes set forth at A.C.A. § 26-80-110(b)(1) through (4). However, as I noted in my previous opinion, I am unable to opine whether a court would conclude that millages devoted to the purpose of repaying revolving loans might also be credited against the uniform rate of tax. Judicial clarification on this issue appears warranted. Pending such clarification, I believe the Department could fulfill its statutory duty by advising the districts of the constitutional difficulties, leaving the various quorum courts to determine whether to treat such repayment millages as credits against the uniform rate of tax.
Question 4: Are there any other relevant changes in the Department'slegal obligations in calculating the total millage necessary for schooldistricts to comply with the uniform rate of tax in consideration of theArkansas Supreme Court Lake View decision?
Not that I know of.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh